BOARD OF ALDERMEN OF TOWN OF BLUE MOUNTAIN *v.* BOARD OF SUPERVISORS OF TIPPAH COUNTY.

[68 South. 250.]

HIGHWAYS. *Issuance of bonds. Towns. Right of funds. Statute.*

Under Code 1906, section 4469, providing for an *ad valorem* tax in such part of the county as may be worked by contract, to be used as a general road fund therein, and that the county treasurer shall pay over one-half of the *ad valorem* tax on property collected within a municipality, to the treasurer thereof, where the streets are worked at the expense of the municipal treasury or by municipal authority, a town working its streets at municipal expense is not entitled to its proportion of the money received from a sale of road district bonds under Acts 1910, chapter 150, as amended by Acts 1912, chapter 257, which had been deposited in the county treasury as a special fund, as a credit to the district, on the theory that it should be treated as an *ad valorem* tax.

APPEAL from the circuit court of Tippah county.

HON. H. K. MAHON, Judge.

Suit by the board of aldermen of the town of Blue Mountain against the board of supervisors of Tippah county. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Spight & Street,* for appellant.

In the absence of legislative provision, all the money raised by taxation within the corporate limits of the

town for road purposes is to be expended on the streets of said town. In *Blocker* v. *The State,* 72 Miss. 720, 18 So. 388, we find this language: "When a town or village is a separate road district, money raised by taxation for road purposes must be expended in said town or village." In the same case it is declared that the municipal authorities have exclusive jurisdiction of all such matters within its limits, and that the board of supervisors of the county have no authority to interfere with the municipal authorities in regard to its streets and public roads.

In section 4469 of the Code of 1906, which was not the law until after the decision of the case of *Blocker* v. *The State, supra,* it is provided that instead of all the money collected within the corporate limits of the municipality for road purposes being used within the corporate limits, such municipality shall be entitled to use for its own benefit, only one-half of the amount raised by taxation upon the property within the town shall be used by the authorities of the town for building and repairing its own streets. This was evidently intended as a concession to the country outside of the town in requiring its aid in building good roads leading into the town for the benefit which would thus accrue to the town in the way of conveniences and inducing trade. It will be observed that neither in the Act of 1910, or of 1912, was there any attempt on the part of the legislature to repeal any part of the general law under the Code in regard to these matters and it was so expressly declared, all being legislation in addition to the then existing laws. Chapter 150 of the Acts of 1910, has been construed by the supreme court in the case of *Holly Springs* v. *Marshall County,* 61 So. 703, with which the court is familiar. In that case it is expressly declared that while the Act of 1910 provides a new method of working the roads, yet it does not provide a full and complete scheme for raising funds, and the same must

be said of the Act of 1912, because the only difference
between these two Acts is that, under the Act of 1912,
the provision is extended to sub-divisions of a county,
whereas, in the Act of 1910, it was limited to entire
counties. In the Holly Springs case the supreme court
held that under section 4469 of the Code of 1906, which
became a part of the Act of 1910, the city was entitled
to one-half of the money raised by an *ad valorem* tax
upon all the property in the city. The only difference
between that case and the one at bar is, that in the one
a direct tax was levied and collected without resort-
ing to a bond issue, and in this case the money was
raised by a sale of bonds, the principal and interest of
which must be paid by an *ad valorem* tax upon all the
property in the entire supervisors' district including
the town of Blue Mountain. In the Holly Springs case,
the money required for road purposes was all collected
at one and the same time from the entire county. In
the case at bar the money is to be collected only from
the third supervisors' district and in installments of an
annual *ad valorem* tax sufficient to pay accrued interest
and to provide for the redemption of the bonds at ma-
turity. The only real contention in this case is as to
whether or not this is an *ad valorem* tax in contempla-
tion of the provisions of section 4469 of the Code of
1906. It is a well-recognized maxim, good in munici-
pal as well as in physical law, that, "Things which are
equal to the same thing are equal to each other." How
can the principle be changed when instead of collecting
all the tax at one time, it is collected in installments for
convenience and to avoid too heavy burdens. The only
reason for issuing bonds bearing interest and providing
for their redemption was that the whole amount neces-
sary for road building, if collected at one time would
be too burdensome upon the tax payers, and that the
improvement sought to be made was of such importance
that it ought not to be delayed until a sufficient amount
should be raised by taxation to complete the work.

Of course, Blue Mountain cannot claim one-half of the *ad valorem* taxes collected annually because in "the contract for the bond issue this money is collected for the specific purpose of payment on the bonds. If Blue Mountain is not entitled to have refunded to it one-half of the proceeds of the bond sale, then it gets no benefit whatever from the bond sale, although the assessed valuation of the property in Blue Mountain is more than one-third of the valuation of the property in the entire district outside of Blue Mountain.

Under the law as announced in the Blocker case, *supra,* and under the Code, section 3330, the board of supervisors have no jurisdiction of the streets and ways in town of Blue Mountain and, as a matter of fact, the board of supervisors do not permit any part of the money derived from the bond sale to be spent within the corporate limits of the town, although the town is burdened with the payment of nearly one-third of the principal and interest of the bonds.

*Thos. E. Pegram,* for appellee.

The question for determination in this lawsuit, as I see it, is whether or not a municipality of a supervisors' district, which had issued and sold bonds of the district under chapter 257 of the Laws of 1912, is entitled to have issued to it, the municipality, a warrant against the funds of the said district for some portion of said proceeds for use on the municipal streets.

It was decided in the case of *Holly Springs* v. *Marshall County,* 104 Miss. 753, 61 So. 703, that chapter 150 of the Laws of 1910, which is the same for all purposes here as chapter 257 of the Laws of 1912, that since said chapter provided no complete method for the working of the roads, section 4469 of the Code of 1906 was not repealed by said chapter, and that said section was applicable in the event the board of supervisors should levy an *ad valorem* tax for the working of the roads under said chapter.

Said section 4469 relates among other things to the manner of raising and distributing an *ad valorem* road tax. It makes no mention of, nor in any way attempts to deal with, funds derived from sale of bonds. The court held, in effect, that instead of chapter 150 repealing section 4469, the two should be taken together in order to provide a complete and satisfactory scheme for the raising and distributing of the funds derived from an *ad valorem* road tax. This decision was wise and just for the simple reason that, if that chapter was inadequate as to detail and furnished no complete plan, then the general and complete law on the same subject ought to be resorted to for guidance.

The principles laid down in the Holly Springs case are helpful in determining the rights of the parties in the instant lawsuit. If chapter 257 is incomplete as to the manner of raising *ad valorem* tax and disbursing the same, it is as equally incomplete as to the manner of raising funds by the sale of bonds and for the distribution of the same. If we must go to section 4469 of the Code of 1906 for direction as to the disbursing of the *ad valorem* tax raised under chapter 150, or chapter 257, said section being the complete and general law on the subject of *ad valorem* tax, then on the same theory, if funds are raised under said chapters by the sale of bonds, we should endeavor to find some general and complete method for the raising and distributing of the funds so raised by said bond sale. Therefore, it seems that there remains only one question, and that is, to determine whether the law of the state affords such detailed plan in regard to funds raised by sale of bonds. There are such general provisions which are embodied in chapter 149 of the Laws of 1910. Said chapter 149 was amended and rewritten in chapter 145 of the Laws of 1912.

It is provided in the beginning of section 6 of both chapter 149 and 145, aforesaid, "that such highway, or

highways, so surveyed and adopted by such commissioners shall be constructed and maintained out of the proceeds of such bonds; proceeds of such bonds to be used alone in their construction, etc.'' The legislature of 1912 not only provided by chapter 145 of the Laws of 1912 for a complete' and detailed system as to the manner of working roads by the issuance and sale of bonds, but it went further and provided that if bonds were so issued and sold that from the proceeds of such sale the county commissioners, or the district commissioners, as the case may be, might expend a portion of said fund in the construction and maintenance of a road or roads through the municipalities of the district. See chapter 174 of the Laws of 1912. This amendment demonstrates, beyond question, it seems to me, that it was never the legislative intent that a portion of the proceeds of a bond sale under said chapter 257 should be turned over to the municipal treasurer as is done in the case of an *ad valorem* tax. While I am aware of the fact that legislation subsequent to the Laws of 1912 is not at all beneficial in determining the intent and meaning, and aiding in the construction, of chapter 150 of the laws of that year; yet I call the court's attention to the significant fact that chapter 255 of the Laws of 1914, which is amendatory to chapter 257 of the Laws of 1912, provides that out of the funds arising from a bond sale the roads of a municipality may be worked under the supervision of the commissioner or commissioners of the county or district in conjunction with the authority of the municipality.

The case of *Blocker* v. *State*, 77 Miss. 720, 18 So. 388, has no bearing on the case here. That case simply decided that a person who blocked the streets of a municipality was not subject to punishment under section 1145 of the Code of 1892 which prohibited the obstruction of public highways.

COOK, J., delivered the opinion of the court.

The case presented to us rests upon an agreed statement of facts, which is in these words, viz.:

"It is hereby agreed by and between Spight & Street, attorneys for plaintiff in this cause, and T. E. Pegram, attorney for the defendant herein, that Blue Mountain is an incorporated town in the Third supervisor's district of Tippah county, containing a population of about six hundred, and including within its corporate limits an area of about one mile square.

"That the assessed value of the property, real and personal, in said Third supervisor's district, exclusive of Blue Mountain, is four hundred and thirty-one thousand and eight dollars; that the total valuation in Blue Mountain is one hundred and eighty-seven thousand and four dollars and fifty cents.

"That at the May meeting, 1913, there was filed with the board of supervisors a petition signed by twenty per cent. of the qualified electors of the said Third supervisor's district asking that, for the purpose of building roads, said Third district be allowed to come under chapter 150 of the Acts of 1910, as amended in chapter 257 of the Acts of 1912, and that a bond issue of twenty thousand dollars be had. The board ordered an election to be held in said Third district, on the 17th day of July, 1913, and said election was held according to law and the vote duly declared in favor of said petition.

"Whereupon the board of supervisors entered an order upon their minutes declaring said Third district to be under chapter 150, Acts of 1910, as amended by chapter 257, Acts of 1912, for road building, and ordered a bond issue of twenty thousand dollars, which is not in excess of the limitations prescribed by law, and on the 1st day of May, 1914, sixteen thousand dollars of bonds were issued, and on the 2d day of June said bonds were sold according to law, maturing on the 1st day of May of each year thereafter, and bearing interest at the

rate of six per cent. per annum from said 1st day of May, 1914, and the proceeds of said bond sale, to wit, sixteen thousand and eighty-two dollars, was deposited in the county treasury as a special fund to the credit of said Third district; that prior to this time said Third district had worked its roads under the overseer system.

"It is further agreed that the town of Blue Mountain works its streets at the expense of the municipal treasury, and by municipal authority, and, if the provision of section 4469, Code 1906, in regard to division of funds raised by an *ad valorem* tax, applies in this case, the town of Blue Mountain is entitled to two thousand and four hundred and forty-nine dollars and eighty-nine cents to be paid out of said special fund, to wit, sixteen thousand and eighty-two dollars. It is further agreed that through its constituted authorities Blue Mountain has demanded of the county treasurer and the board of supervisors the said sum of two thousand and four hundred and forty-nine dollars and eighty-nine cents, and presented this claim to the board of supervisors, which was rejected, and both the said treasurer and the said board of supervisors refused, and do now refuse, to pay, or authorize to be paid, to the town of Blue Mountain, any part of said proceeds of said bond sale."

The town insists that its proportion of the money derived from the sale of bonds should be paid to it, and that its proportion of the fund should be ascertained and measured by section 4469, Code of 1906, treating the money to be paid by it as *ad valorem* taxes. The amount claimed is based upon the present assessed valuation of the property in the town. The money which will be collected from the taxpayers of the towns will, of course, have to be paid to the owners of the bonds. The fund it is sought to have divided was not collected from the taxpayers; it was received from the purchasers of the bonds in exchange for the bonds. We

do not believe that the statute is elastic enough to bear the strain which would be put upon it should we approve appellant's construction.

*Affirmed.*