GULLY, STATE TAX COLLECTOR, *v.* ADAMS COUNTY.

(In Banc. Feb. 26, 1934. Suggestion of Error Overruled April 2, 1934.)

[153 So. 165. No. 30662.]

J. H. Sumrall and May, Sanders, McLaurin & Byrd, all of Jackson, and **S. L. McLaurin**, of Brandon, for appellant.

Kennedy & Geisenberger, of Natchez, for appellee.

Argued orally by **J. H. Sumrall** and **George W. May**, for appellant, and by **Lawrence T. Kennedy**, for appellee.

**Per Curiam:**—The judges of this court are equally divided on the question of error vel non in the decree of the court below. Judges GRIFFITH, ETHRIDGE, and SMITH, are of the opinion that these is no error therein; and Judges McGOWEN, ANDERSON, and COOK are of the contrary opinion. As we cannot reverse the judgment of the court below, it must be, and is, affirmed.

**McGowen, J.**, delivered an opinion.

On account of the importance of this case, I deem it proper to set forth my view of the facts and law of the case as disclosed by this record.

On January 11, 1932, J. B. Gully, state tax collector, for the use and benefit of the city of Natchez, Mississippi, exhibited his bill in the chancery court of Adams county against said county. A demurrer to the original bill was sustained and an amended bill was filed, to which the court below again sustained a demurrer, and the complainant in the court below, the appellant here, declining to amend further, the original bill as amended was dismissed, and the state tax collector prosecutes an appeal here.

The original bill was filed by W. J. Miller, who was then the state tax collector. Afterwards J. B. Gully succeeded him and continued the prosecution of the suit.

After alleging the power of the state tax collector to bring suit for past due obligations, especially with reference to municipalities, the appellant alleged that he caused an examination of the records of the city of Natchez and the county of Adams, and ascertained therefrom that during the years 1927, 1928, 1929, and 1930, there had been collected by the county of Adams ad valorem taxes for road purposes, on property within the city of Natchez, amounting to various sums of money of which the city of Natchez was entitled to one-half but which it had never received; and that he, as state tax collector, was authorized by the law to demand on behalf of the city of Natchez one-half of said ad valorem taxes. An account addressed to the board of supervisors of Adams county demanding one-half of the ad valorem road taxes collected on the property for the several named years, with the amount collected and the city's share thereof, was attached to the bill of complaint as an exhibit, and it was alleged that said account had been presented to the board of supervisors of said county and had been rejected, and that the state tax collector demanded payment thereof on behalf of the city of Natchez. There was further attached to the bill as an exhibit a resolution of the mayor and board of aldermen of the city of Natchez, passed May 5, 1920, in which it was recited that the said city desired to preserve for itself the benefit of an act of the Legislature, approved April 3, 1920, being chapter 232 of the Laws thereof, claiming thereunder its share of all levies and collections made by the county of Adams for road purposes, and the clerk of the municipal board was directed to forthwith make and file a copy of the resolution with the board of supervisors.

The bill alleged that the city of Natchez was a municipality, the streets of which were worked at the expense of the municipal treasury by its authority, and alleged that for the several years there had been collected annually on the property within the city of Natchez certain amounts for road purposes; that prior to the enactment of chapter 232 of the Laws of 1920, the county of Adams had levied a tax for road purposes, but after said enactment the board of supervisors had levied annually, for the years named, by including in the levy of taxes made for the general funds of said county a sufficient levy to maintain the roads of said county, and had periodically, after the collection of such taxes, under such levy, allocated or transferred from the general fund to the county highway fund sufficient money for the maintenance of the county roads, and passed the diverted fund to the credit of the county highway systematically for the years for which suit is brought herein. It was alleged that prior to the annual levy of taxes the board of supervisors published in its budget, as required by the statute, the amount of money which would be devoted to the maintenance of the public roads of the county, and that sums were so allocated by the board of supervisors, after the collection of the taxes for the several years, and that the county of Adams had resorted to the subterfuge and administrative devices of including its road maintenance levy in the general fund levy for the collection of taxes for the maintenance of its highways, and that this practice was pursued during the years 1927, 1928, 1929, and 1930; and that no part of same was levied for the purpose of paying bonds issued for road purposes or the interest thereon, or for creating a sinking fund for retiring same. It alleged further that the resolution passed by the city of Natchez in this behalf was on the same day served on the board of supervisors of Adams county, as shown by an entry on the minutes of said board of supervisors. The exhibit disclosed that,

for the years 1927 and 1928, the board of supervisors transferred, as alleged in the declaration, for road purposes, thirty-one thousand dollars; for the years 1928 and 1929, sixteen thousand dollars; for the years 1929 and 1930, twenty-five thousand dollars; for the years 1930 and 1931, thirty-three thousand seven hundred dollars, making a total transfer of one hundred five thousand eight hundred dollars; and that for these respective years, the city of Natchez' one-half share thereof was: ten thousand six hundred forty-five dollars and forty cents, five thousand five hundred thirty dollars and thirty-four cents, eight thousand five hundred eighty-seven dollars and fifty cents, eleven thousand six hundred thirty-six dollars and fifty-six cents, making a total alleged to be due the city of Natchez of thirty-six thousand three hundred eighty-nine dollars and eighty cents.

I shall take up and consider the several points argued as ground for upholding the action of the court below in sustaining the demurrer to the bill.

1. The right of the state tax collector to prosecute this suit is upheld in Gully, State Tax Collector, v. Copiah County (Miss.), 147 So. 300.

2. It is contended by Adams county that its system of levying the taxes as a part of the general fund of the county, and afterwards allocating a portion thereof to the county highway fund, was not an administrative device or subterfuge, and that the taxes so levied were not subject to the claim of the city of Natchez on account of chapter 232 of the Laws of 1920 and amendments thereto.

The applicable statutes under which the state tax collector claims that Adams county is in default of money due the municipality are chapter 232, Laws of 1920, chapter 129, Laws of 1928, and sections 6417 and 6418 of the Code of 1930. By chapter 232 of the Laws of 1920, it is provided that ''one-half of all ad valorem taxes collected by or for a county  .   .   ..   on prop-

erty within a municipality, the streets of which are worked at the expense of the municipal treasury, or worked by municipal authority, for road purposes of such county . . . shall be paid over to the treasurer of such municipality for said municipality." (Section 1.) Section 2 provides further: "Any municipality desiring to preserve for itself the benefits of this act shall by resolution notify the board of supervisors that such municipality will claim its one-half of all road taxes collected therein, and thereafter such municipality shall be entitled to all the benefits of this act."

It will be noted that prior to the enactment of chapter 232 of the Laws of 1920 the county had been collecting taxes for road purposes as such, and after the enactment of this law it no longer levied taxes for road purposes, but published in its budget that it would expend moneys for road purposes, and thereafter levied taxes for that purpose as a part of the general county fund and allocated and devoted same to that purpose.

In the case of Town of Purvis v. Lamar County, 161 Miss. 454, 137 So. 323, we held that statutes, evidencing fixed and long-continued, consistent legislative policy and intent, must not be so construed as to permit inferior administrative boards to resort to administrative devices operating to set aside such intent; and further that this court did not arm the board of supervisors with an administrative device by which it could evade or set aside the entire purpose and policy of the law in respect to the share of the towns in the current ad valorem road taxes. The court further held that the question of whether the county was acting within or without the authority of law in borrowing money and issuing its note therefor for road maintenance purposes, which the tax therein was levied to pay, did not avail the county in that suit. The Town of Purvis case was followed and approved by the case of Gully, State Tax

Collector, v. Attala County, 165 Miss. 86, 145 So. 907, and the same rule was again announced.

The board of supervisors of Adams county had the power to levy an ad valorem tax for road purposes, and it could not by administrative devices of shifting its funds from one account to another escape its liability for that portion thereof which belonged, under chapter 232 of the Laws of 1920 and all the subsequent amendments thereto, to the city of Natchez. The board of supervisors had the power to levy the tax, and the fact that it did not pursue the proper method in making its levy cannot now be used as a defense to defeat the claim of the municipality thereto. In the case at bar the county resorted to an administrative device condemned in the Town of Purvis case.

It is said that the Town of Purvis case does not apply here, because the money was illegally collected and transferred from the general fund to the county highway fund. The board of supervisors gave notice herein, by its county budget, that it would expend these large sums for the maintenance of the county highways, and then resorted to the device of putting the sums required by it for general county purposes and highway purposes into one levy, making one tax of so many mills. Thus, for instance, as an illustration, if the figures show that, if needed, a three-mill tax was required by it for general purposes of the county and a two-mill tax for road purposes, the board of supervisors resorted to the device, when it made its levy each year, of combining the two taxes and levying a total of five mills for general county purposes. I do not for a moment contend that this was a legal device, but I do say that the county budget, together with the immense amount of money amassed by the board in the treasury, shows that it was an administrative device, and that it is of no consequence whether the device was legal or illegal. In the case of the Town of Purvis, supra, the board of supervisors resorted to

the plan of working its public roads and proceeded so to do on credit, issuing short-term loan warrants, and thereafter levied a tax to pay these loan warrants which it had illegally issued and which debt it had illegally contracted, resorting to the device of using short-term loan warrants and levying a tax to pay the loan warrants issued in lieu of bonds. A tax was not levied for road purposes to be thereafter expended, but one levied to pay a debt which had been illegally contracted; and this the board had no power to do. In that case we held that the municipality's share of the money must be paid to it whether the taxes were legally collected or not. To hold otherwise would destroy all the efforts of the Legislature to confer the absolute right upon municipalities to one-half of the money collected within its borders for road purposes. And this is a clear case for the application of the rule announced in the case of Town of Purvis, supra.

So far as the bill in this case shows, Adams county has this money on hand in excess of one hundred thousand dollars, and the only defense interposed for it in one of the other opinions is that the money was illegally obtained by it from the taxpayers of the city of Natchez. It is clear that it levied and collected sums herein set forth in excess of the amount needed for other than road purposes. It is clear that it notified all taxpayers by the county budget, which it published in advance of the levy, that it would collect money for road purposes. This it did not do directly, but undertook to do by an administrative device; and to plead its own fraud as its only defense should not be allowed. It is but a kindness to the board of supervisors of Adams county now to hold the county liable to the city of Natchez for the money collected from its taxpayers for road purposes. The allegation is clear that it was for no other purpose.

By section 3972, Code 1930, the clerk of the board of supervisors is required to have his books contain ac-

counts under headings corresponding with the several headings of the budget, and not to correspond with the subsequent levy of the board. It therefore appears that the budget law was complied with, at least the contrary is not shown.

3. The contention is made that the resolution adopted in 1920 by the governing authorities of the city of Natchez does not extend to or include the years for which this suit is brought. It will be noted that chapter 232 of the Laws of 1920 requires action by resolution of the mayor and board of aldermen and stipulates that thereafter the municipality shall be entitled to its share of the road money collected within its borders. The resolution passed is very full and complete and leaves no room for doubt that it did not, in terms, undertake to limit the time within which the municipality could make claim to the money. The municipality had the right to pass the broad general resolution, and, so long as it remained unrepealed, it was effective to comply with the statute just so long as the Legislature authorized the municipality to receive one-half of the funds collected for road purposes by the county. It was not necessary for the city of Natchez to pass the resolution periodically or annually. There cannot be applied to it any statute of limitations or laches, as held by this court in the case of Town of Crenshaw v. Panola County, 115 Miss. 891, 76 So. 741, wherein it was expressly held that section 104 of the Constitution of 1890 provides that the statute of limitation shall not run against a municipal corporation—that the Constitution closes the door when the plaintiff is a municipal corporation.

4. It is insisted that the statute was repealed by chapter 227, Laws of 1926, as announced in the case of Board of Sup'rs of Lauderdale County v. City of Meridian, 149 Miss. 139, 114 So. 803. In that case we expressly held that chapter 227, Laws of 1926, only repealed chapter 232 of the Laws of 1920 to the extent that levies for

specified improved roads were no longer within the purview of the latter act. The statement does appear in the case of J. B. Gully, State Tax Collector, v. Board of Supervisors of Copiah County (Miss.), 147 So. 300, 301, that the entire statute enacted in 1920 was repealed, an 1 cites the Meridian case. This was error and the balance of the opinion clearly indicates that the court did not intend to modify or overrule the Meridian case, but rather cited it with approval.

5. It is next urged that under the authority of sections 6417 and 6418 of the Code of 1930, effective November 1st of that year, it was necessary for the governing authorities of the city of Natchez to again make demand or application to the board of supervisors of Adams county in order to maintain this suit. Section 6417 requires the board of supervisors of a county to pay to a municipality, such as Natchez, one-half of all the money collected for road purposes as therein described; and section 6418 is in this language:

"Where any municipality may be entitled to a portion of any road tax under the laws in effect prior to the adoption of this code which has not yet been paid to it, such municipality shall be entitled to receive payment thereof on application to the board of supervisors of the county in which it is located; and the board of supervisors is hereby authorized to pay to such municipality its portion of such tax."

By this section all the rights of the municipality, as existed under prior acts, to one-half of the road funds here involved, as construed by this court in prior decisions, were preserved to the municipality. In the case at bar the state tax collector, who was entitled and empowered to sue, made demand, and the board of supervisors rejected the claim and is now litigating the case. We are of the opinion that the state tax collector on behalf of the city of Natchez fully made application for the payment of this claim, and that the application on

the part of the municipal authorities, contemplated by section 6418, would only involve a matter of costs and is not a condition precedent to the liability of the county, as is the case with reference to the resolution of the governing authorities of a municipality, required by chapter 232 of the Laws of 1920.

Having reached the conclusion that on May 5, 1920, the municipal authorities complied by resolution with the demand feature of chapter 232, Laws of 1920, it would seem, and we so hold, that the formal demand of the state tax collector fully complied with the requirement of section 6418, Code of 1930. After the 1920 notice, the municipality acquired a continuing right to its share of the road money, so long as its resolution and the statute upon which same was predicated remained in force. It is not to be controverted that the municipal authorities cannot give away its public tax money. See Files v. McWilliams, 49 Miss. 578; Klein v. Board, 51 Miss. 878.

6. It is insisted that by virtue of chapter 129, Laws of 1928, it was necessary for the appellant to have alleged that the road funds had not been otherwise appropriated. This court expressly held in Gully v. Board of Sup'rs of Copiah County, supra, that as to taxes collected after the passage of that statute no such allegation is necessary, for the words therein ''have not been paid'' refer to the past and not to the future. We are of opinion that in the case of Ackerman v. Choctaw County, 157 Miss. 594, 128 So. 757, this court did not then have before it the question here presented, and later properly presented in the Copiah County case, which should now be approved by us in the case at bar. As to the taxes collected subsequent to the enactment of the Laws of 1928, it is not necessary to allege that the funds have not been otherwise appropriated.

7. It is next contended that by section 6390, Code of 1930, it was mandatory upon the board of supervisors to levy a tax for road purposes, and that this language

in the conclusion of the section prohibits a recovery in this case: ''And such funds shall be kept as a separate road fund and shall be paid out only on allowances and warrants of the board of supervisors for said purposes.'' The subsequent sections 6417 and 6418 clearly authorize the payment of the taxes here involved to the municipality, and when the three sections are construed together, as we must do, there seems to be no merit in the contention.

As to the taxes collected for the year 1927, the bill does not allege that there funds remained in the treasury and were not otherwise appropriated, and in the Copiah County case we held this allegation necessary as to 1927 taxes. I think the Laws of 1928 do not purport to be an amendment of the Laws of 1920, but only an amendment of chapter 227, Laws of 1926, and, consequently, apply only to the class of roads therein specifically named. However, unless the Copiah County case is overruled thereunder as to 1927 taxes, this allegation is necessary. As to all the other taxes collected for road purposes, as herein determined, the bill alleges a good cause of action. The demurrer was a general one, and it must be sustained or overruled in its entirety. The allegations were not sufficient as to the year 1927, but were adequate as to the subsequent years; so it follows that the court below should have overruled the demurrer. See N. O. & N. E. R. R. Co. v. N. O. G. N. R. R. Co., 107 Miss. 453, 65 So. 508.

**Cook** and **Anderson, JJ.,** concur in this opinion.

**Ethridge, J.,** delivered an opinion.

The state tax collector filed this suit against Adams county for thirty-six thousand three hundred eighty-nine dollars and eighty cents, claiming that the city of Natchez was entitled to this sum from the county, being

one-half of certain moneys expended by the board of supervisors for road purposes in the city and county for the years 1927-1930; claiming said sums under the provisions of chapter 232, Laws of 1920, as amended by chapter 129, Laws of 1928. It was alleged in the bill that the city of Natchez worked its streets at the expense of the municipal treasury, and was entitled to one-half of all ad valorem taxes collected by or for the county on property within said municipality for road purposes for said county. It was alleged that the board or supervisors, instead of levying a specific tax for road purposes, levied a general tax for the general funds of the county, sufficient to maintain roads in the county, and would from time to time transfer from the general county funds to the county highway funds sufficient money for the maintenance of the roads of the county, placing the diverted funds to the credit of the highway fund; and that this practice was systematically resorted to by the board of supervisors during the years 1927-1930.

It was alleged that on the 5th day of May, 1920, the municipal authorities gave notice to the board of supervisors that they would claim the benefit of chapter 232, Laws of 1920, by which the city was entitled to one-half of the ad valorem taxes collected for road purposes within the city of Natchez. That prior to 1920 the board of supervisors had levied a special road fund for the working of the public roads of the county; and that after the publication of the notice from the municipal authorities, the board of supervisors ceased to levy taxes for road purposes for Adams county by a specific levy for that purpose, but adopted the subterfuge and administrative device of including the road maintenance levy in the general fund levy for the collection of taxes for the maintenance of the highways of the county; and that this practice was pursued from time to time, and especially during the said years as an administrative

device to avoid paying the city of Natchez its portion of the money levied and collected for road purposes.

It is alleged that this practice is contrary to the legislative policy and intent, and that the said levies were not made for purposes of paying bonds issued for road construction and maintenance, or the interest thereon, or to create a sinking fund to retire the same. It is further alleged that during the years 1927-30, the board of supervisors provided in the county budget that a specified sum should be allocated to the maintenance of roads in Adams county, but made no specific levy of taxes for the raising of the money; and each year paid from the diverted general county fund amounts largely in excess of the budget of each year, by the systematic use of the device and subterfuge mentioned. It was not alleged what road laws were in force during said period in Adams county, and this should have been done because section 85 of the Constitution requires the adoption, by the board of supervisors, of laws providing for contract or convict systems, for the working of public roads before they become effective. That the notice or resolution passed on the 5th day of May, 1920, by which the city claimed the benefit of chapter 232, Laws of 1920, was served on that day on the board of supervisors of the county. It was further alleged that the state tax collector had made demand upon the board of supervisors for such sum, and that he was authorized to sue the county on behalf of the municipality.

The bill was demurred to on a number of grounds, the demurrer was sustained, and the state tax collector declined to plead further. Thereupon, final judgment was rendered.

I am of the opinion that the judgment should be affirmed, because the bill shows that the board of supervisors did not make a levy for road purposes under section 6390 of the Code of 1930; and it is immaterial whether or not the board had authority to make the general

levy for county purposes, and thereafter diverted a portion of the general county levy to the county highway fund. In my opinion the municipality was not entitled, in either event to one-half of the funds allocated by the county from the general fund to the highway fund. If the board had no legal power to so divert the money collected for general county purposes, this would not give the city a right to one-half of the money under the illegal transaction; and if they had authority to do this, then the city did not become entitled to one-half of the amount collected, or diverted to road maintenance. What the statute contemplates is that where a special levy is made for road purposes, as may be done, the city shall be entitled to have one-half of such funds, so lawfully collected. The measure of rights in this case is chapter 129, Laws of 1928, amending chapter 232, Laws 1920. See State v. Wyoming Mfg. Co., 138 Miss. 249, 103 So. 11, and cases cited therein.

In my opinion, this controversy is controlled by the principles laid down in Town of Waveland v. Hancock County, 110 Miss. 471, 70 So. 561, where it was held that while the Code of 1906, sections 4433 and 4469, relating to taxes collected directly for working public roads, provides that one-half of the tax collected on property within the municipality shall be paid to such municipality for street purposes, yet where under the Laws of 1910, chapter 150, the board of supervisors issued bonds for road purposes, and levied and collected an ad valorem tax on all taxable property of the county, including property in a town which worked its own streets, the town was not entitled to one-half of the taxes collected upon urban property, since such tax was collected in the interest of bondholders, and must be paid to the holders of the bonds.

If the city had appealed from the order levying the taxes, or from the order allocating the taxes, or had taken timely proceedings by mandamus to compel the levying

of road taxes, instead of making the levy for general county purposes, and diverting the necessary amount for road purposes, it might have standing in court; but as no assessment for road purposes, or levy therefor, was made, the city does not come into the right to one-half of such funds as might have been spent for road purposes. The difficulty is plain: If the board diverted a given amount for road purposes, and it was spent for that purpose, it would manifestly require, in order for the city to get an equal amount, to have an additional levy to that which was made. The city apparently acquiesced in the proceeding, and took no steps to prevent the practice complained of here, or to secure a proper and legal levy by which its rights could be enforced.

It is clear to my mind that the city was not entitled to maintain the suit here sought to be maintained, and the judgment of the court, for that reason, was correct. But if mistaken in this view, still the suit must fail, because the rights of the city would be measured, under this suit, by the Laws of 1928, chapter 129, which, so far as this suit is concerned, governs the rights of the city, if its contention was sound as to the proposition that it could now challenge what the board did, and collect what it should collect, had a proper levy been made for road purposes. The right of action sought in the bill in this case is for the years 1927-1930. By section 4 of the Code of 1930, it is provided:

"The repeal of any statutory provisions by this code shall not affect any act done, or any cause of action, or any right accruing or accrued or established, or any suit or proceeding had or commenced in any civil case, or any plea or defense or bar thereto, previous to the time when such repeal shall take place; but the proceedings in every such case shall be conformed, as far as practicable, to the provisions of this code."

It will be seen from this section that the provisions of sections 6417, 6418, of the Code are entirely pros-

pective, and that all of the rights accruing or accrued are established prior to the taking of effect of the Code, and are not affected by the Code sections.

I also think that the demand of the state tax collector is not sufficient to comply with section 3 of chapter 129, Laws of 1928, or with section 6418 of the Code of 1930. A general demand made of the board of supervisors after the debt has matured, and in which nothing but a suit is necessary to enforce the demand, is governed by section 253 of the Code of 1930, which provides that any person having a just claim against the county, should first present it to the board of supervisors for allowance or disallowance, and providing that if such claim should not be allowed, there might be an appeal to the circuit court or a suit against the county in the proper court.

The state tax collector's demand might satisfy this statute, but I think it would take a demand by the board of mayor and aldermen, or municipal authorities, as such, to come within section 3 of chapter 129, Laws of 1928. The demand contemplated in this statute is separate from, and in addition to, the demand mentioned in section 253, Code of 1930. This demand, in my opinion, should have been made by the municipal authorities, having the sole authority so to do. They may waive the right, and there are many conceivable cases in which it would be advantageous to the municipality to do so, although ordinarily this is not the case. This section reads as follows:

"That where any municipality may be entitled to a portion of any road tax under the provisions of chapter 232, Laws of 1920, which has not yet been paid to it, such municipality shall be entitled to receive payment thereof on application to the board of supervisors of the county in which it is located, and the board of supervisors is hereby authorized to pay to such municipality its portion of such tax or such part thereof as may not

have been otherwise appropriated or expended, notwithstanding the provisions of chapter 227, Laws of 1926.''

It will be perceived from a careful reading of the statute that the municipality is not entitled to receive the funds until demand has been made, and then it is not entitled to receive them if such funds have already been expended, because the latter part of the section authorizes the supervisors to pay such municipality its portion of such tax, or such part thereof as may not have been appropriated or expended.

The declaration does not allege that the funds had not been expended or appropriated prior to the making of the demand. This was expressly held to be a requisite to the recovery in the case of the Town of Ackerman v. Choctaw Co., 157 Miss. 594, 128 So. 757. I think the question was expressly presented and decided in this case. The opinion states (page 599 of 157 Miss., 128 So. 757, 758):

''On May 7, 1929, the town council passed another resolution to the same effect which was duly entered on the minutes and of which notice was served on the county; and appellant contends that it is entitled to recover upon that resolution, under section 3, chapter 129, Laws 1928. This section reads as follows: 'That where any municipality may be entitled to a portion of any road tax under the provisions of chapter 232, Laws of 1920, which has not yet been paid to it, such municipality shall be entitled to receive payment thereof on application to the board of supervisors of the county in which it is located, and the board of supervisors is hereby authorized to pay to such municipality its portion of such tax or such part thereof as may not have been otherwise appropriated or expended, notwithstanding the provisions of chapter 227, Laws of 1926.'

''Where this section had reference to municipal resolutions passed subsequently to the enactment of said section we need not decide, because the recovery under

it is authorized only upon the condition that the funds had not previous to the demand 'been otherwise appropriated or expended' by the county; and there is no allegation in the bill of complaint that the county had at the time of the demand any part of said 1928 road funds on hand not already expended or otherwise appropriated, nor is there any definite proof on that issue. Appellant says that this is defensive, but we think this view is erroneous, under the general rule that where a cause of action is dependent upon conditions, the burden is upon complainant to allege and prove that the facts exist which fulfill or satisfy those conditions; and we are pointed to no sufficient reason for an exception to the rule in this case. The general rule above stated is applied with strictness to actions founded on statutes." (Citing authorities).

This is manifestly a correct conclusion. The Legislature, in revising the rights of the municipality, recognized that the funds may have been expended prior to the demand; and, if so it did not intend to give the right. We must give effect to every part of the statute; and under the terms of the statute, the only part to which the municipality has the right, on making the demand, is such part as may not have otherwise been appropriated or expended.

This present case is not controlled by Gully, State Tax Collector, v. Board of Sup'rs of Copiah County (Miss.), 147 So. 300, 301. In that opinion the court said:

"This recital is said by counsel for the appellee not to sufficiently set forth a compliance with the requirements of section 2 of chapter 232, Laws 1920, that municipalities shall notify the counties of their intention to claim one-half of the road taxes collected within the municipalities. The question thereby presented is one of some difficulty, but it will be eliminated by a proper amendment of the declaration when the case is

remanded to the lower court, as it must be, for reasons hereinafter to be set forth, consequently, we will pretermit any discussion of it. Section 3 of chapter 129, Laws 1928, obligates counties to pay to municipalities one-half of the ad valorem taxes of the character here in question which have not been paid to it, and which may not have been otherwise appropriated or expended. The declaration contains no allegation that such is here the case, consequently, in so far as the taxes here collected prior to the enactment of chapter 129, Laws of 1928, are concerned, the declaration is fatally defective. Town of Ackerman v. Choctaw County, 157 Miss. 594, 128 So. 757.''

The taxes sought to be collected in the Copiah County case quoted from were said to have accrued after the enactment of the Code. In the Copiah County case, supra, and in Town of Purvis v. Lamar County, 161 Miss. 454, 137 So. 323, the taxes in question had been specially levied for road purposes. Those cases are different from the one we now have before us. Here there was no levy of special taxes for road purposes. It seems to me that the board of supervisors had the right in the present case, unless a contract or convict system had been adopted by the board for road working in Adams county, to make the levy under the general county levy, and to appropriate it to any public use authorized by law to receive public funds from the county. Section 214, Code of 1930, reads as follows:

''The boards of supervisors shall have within their respective counties full jurisdiction over roads, ferries, and bridges, except as otherwise provided by section 170 of the Constitution and all other matters of county police. . . . They shall have power to levy such taxes as may be necessary to meet the demands of their respective counties, upon such persons and property as are subject to state taxes for the time being, not exceeding the limits that may be prescribed by law; they shall

cause to be erected and kept in good repair, in their respective counties, and in each judicial district thereof, a good and convenient courthouse and a jail; and they shall have and exercise such further powers as are or shall be conferred upon them by law.''

It will be seen from this section that the board of supervisors has power to levy such taxes as may be necessary to meet the demands of their respective counties, upon such persons and property as are subject to state taxes for the time being, not exceeding the limitations that may be prescribed by law, and that the board of supervisors had full jurisdiction over roads, ferries, and bridges, except as provided by section 170 of the Constitution, and of all other matters of county police. It would seem that they had the power to make a general county levy for all purposes authorized by law, provided they do not exceed the limits placed by statute upon that power. The power is broad and comprehensive. The general county funds appear to be available for general county purposes, including road and bridge maintenance or construction, unless a special system had been adopted for that county that would require compliance with sections 6389 and 6390, Code 1930 (Laws 1928, chap, 157, Laws 1920, chap. 276). By section 256, Code of 1930, the board of supervisors shall direct the appropriation of money that shall come into the county treasury, but shall not appropriate the same to an object not authorized by law.

These two sections, construed together, seem to give the board the power to determine whether they will collect the taxes for general purposes, and then apportion it out to the various public purposes within their jurisdiction.

I do not think the budget law is important in this case, unless the county had adopted a contract or convict system of road work. But if it is, there was designated in the budget the amount of money that would

be allocated to road purposes, thereby complying with the budget law. This law does not control the manner in which the board of supervisors shall levy the respective funds; and unless some other limitation or restriction is found in the statute, their discretion seems to be full and plenary. Having authority to expend money upon roads, it appears to me that they may include such expenditures in the general levy estimates. However, as stated above, the city has here no concern with that question. Had it acted at the proper time, and in the proper manner, it may have had rights. Had it sought to compel the board to resort to a special levy for road purposes under section 6390, Code 1930, it might possibly have prevailed; but it did not do so, and its failure does not authorize it now to share in this money expended for road purposes out of the general county funds. The city cannot profit by such act.

**Smith, C. J.,** delivered an opinion.

The primary question here presented, and which, if decided adversely to the appellant, will end this controversy, is this: Did any part of the taxes here collected become legally a part of the appellee's road fund? If they did not, then the board of supervisors was without the right to apply any part thereof to the maintenance of the county's roads, and therefore the city of Natchez is without the right to claim any part thereof.

The bill of complaint does not allege that the taxes were collected or appropriated to the maintenance of special roads, or roads of a special road district, but only that the taxes were collected for, and appropriated to, the maintenance of "the public roads of Adams county." Neither does the bill allege by what system or under what statute the county roads were worked, so that it does not appear therefrom under what statute the taxes were collected and expended, at least one of

which should appear to make the levy and expenditure of the taxes lawful.

But we will put aside that defect in the bill, and proceed on the theory that the county proceeded under one of the statutes authorizing it to appropriate ad valorem taxes to the maintenance of its public roads.

Except in specified instances that do not here appear (sections 8373, 8374, 8375, 8380, 8389, 8396, 8448 of Hemingway's 1927 Code; chapter 80, Laws of 1928; section 6330, Code 1930, and other similar statutes), the public roads of a county can be maintained out of ad valorem taxes only when such taxes are specially levied for that purpose. Among the statutes so providing are sections 8387, 8409, 8420, 8423, 8434, 8439, 8520, 8552, Hemingway's 1927 Code; sections 6389 and 6390, Code 1930.

All of the statutes fixing the levy of ad valorem taxes for general county purposes exclude therefrom road, bridge, and school taxes. Chapter 117, Laws of 1926; chapter 16, Laws Ex. Session 1928, and chapter 268, Laws 1930. Taxes levied under these statutes cannot be used for road, bridge, or school purposes, unless specially permitted by some other statute of the character hereinbefore pointed out. From this it necessarily follows that the board of supervisors of Adams county were without power to include in the general levy of taxes authorized by chapter 117, Laws of 1926, chapter 16, Laws of Ex. Session of 1928, and chapter 268, Laws of 1930, taxes for the maintenance of the public roads of the county. Consequently, its appropriation of the taxes here in question to that purpose was a clear violation of the law, and therefore conferred on the city of Natchez no right to claim any portion thereof.

It will not do to say that the method here pursued accomplished the purpose contemplated by the statutes, and therefore no harm was done the taxpayer. What we are dealing with is a question of power, not only as to the purpose to be accomplished, but as to the mode

of accomplishing this purpose. The statutes create and limit the power of boards of supervisors in this connection, and the power thereby conferred can be legally exercised only in accordance with the statutes. The taxes collected within a municipality which a county may pay over to the municipality are such only as are ''collected . . . for road purposes,'' and none such were here legally collected.

The case of the Town of Purvis v. Lamar County, 161 Miss. 454, 137 So. 323, 325, has no application here, for there the taxes in question were levied and collected for road purposes.

There is another question bearing hereon, and which should not be overlooked.

In 1922 by chapter 225 of the Laws of that year, the county expenses were required to be budgeted. In Du Bose et al., Board of Supervisors, v. Cranford, 131 Miss. 770, 95 So. 676, the general purpose of that act was recognized, namely, that it required estimates to be made of the gross amount of contemplated expenditures under each separate main heading, and mentioned some of those of the principal separate headings which are customarily used in the administration of the county fiscal systems, one of which mentioned was the general county fund and another the road fund, naming several of these road funds, as illustrative of the general legislative purpose. It seems to have been conceded by all parties and assumed by the court in that case that the expenditures made by the board must be confined to the principal or general headings under which the several gross estimates are made, and the like concession and assumption is shown in Marshall County v. Barkley, 165 Miss. 198, 147 So. 341. In other words, that money budgeted and collected under one principal heading could not be spent for purposes coming under another principal heading or classification as to character; and to meet the practical difficulties in this requirement, we held in the latter

case that it was competent for the board to budget "miscellaneous expenses" in a relatively small amount, so as to take care of oversights or unforeseen circumstances.

The Budget Law was brought forward as chapter 91, Code 1930. It has been, and remained ever since its enactment, a dominant piece of legislation in the control of county and municipal affairs. Its whole purpose would be defeated, so far as practical results are concerned, if after the preparation and publication of the budget the board could disregard the several principal headings or funds and transfer from one to the other without any limitation, and we hold that this cannot be done. What is to be done when a particular fund has become exhausted, or when at the end of a year a surplus is found in such a fund, is not here before us.

It is alleged in the bill here that the board of super visors annually provided in the county budget a specified sum to be allocated to the maintenance of the public roads, but omitted to levy any taxes for that purpose and each year diverted from the general county fund the sums spent for road purposes, and this largely in excess of the budget of each year as regards road expenditures. In other words, the taxes were levied, collected, and credited for and to the general county fund, and subsequently from time to time were transferred to the road fund, and thereupon the expenditures for roads were made out of the transferred fund. If this can be legally done, the budget law had as well be repealed.

This manipulation was in violation of the budget law. The money did not belong to the road fund, and its illegal transfer thereto can no more bind the county and make it liable therefor, than can the county be made liable for any other violation of the law not done by it. It is a truism in the law that a county cannot be bound by illegal acts of its board of supervisors—acts beyond the limitations of the legal powers of the board—and this remains true, although the county may have received

the monetary benefit of the illegal acts, as has often been held by this court.

The decree of the court below should be affirmed.

I express no opinion on the other questions presented by the record. Judge Griffith requested me to say that he concurs in this opinion.