READY'S SHELL STATION & CAFE, et al. *v.* READY.

June 8, 1953

No. 38743 34 Adv. S. 162 65 So. 2d 268

*Lipscomb & Ray*, Jackson, and *Rae Bryant*, Gulfport, for appellants.

*Arnaud O. Lopez, Howard A. McDonnell* and *Albert Sidney Johnston, Jr.,* Gulfport, for appellee.

Holmes, J.

This is an appeal from the judgment of the Circuit Court of Harrison County affirming an order of the Workmen's Compensation Commission which affirmed an order of the attorney-referee awarding to the appellee compensation under the Workmen's Compensation Act for an injury claimed to have been sustained by the appellee in the course of and arising out of her employment. The facts are undisputed, and the only question presented on this appeal is whether or not under the existing facts the injury claimed to have been sustained by the appellee arose out of and in the course of her employment.

The appellee was an employee of Joe Ready's Shell Station and Cafe, located on the coast in Harrison County. She was expressly covered by name in the policy issued by the insurance carrier. In the daytime she performed duties in and about the station and cafe. She was the bookkeeper for the business and performed all of her bookkeeping work at home, and had done so with the knowledge of the insurance carrier and the approval and authority of her employer for a period of about five years. She performed this work in the evening in the living room of her home, which was located some short distance from the station and cafe, working on a small table which was drawn up to a couch in the room. The exact size of the couch is not shown in the evidence but she testified that it was large enough for four people to occupy. She regularly sat on this couch as she did her bookkeeping work on the table. Her husband owned a 16-guage Browning automatic shotgun which he frequently loaned to his friends. On December 29, 1951,

one of his friends who had borrowed the gun returned it to the station. Ben Johnson, an employee of the station who occupied a house trailer on the premises to the rear of the residence of appellee, saw the gun in the station and took it to appellee's home in the afternoon. No one was at the home of appellee and Johnson laid or stood the gun on the couch. The appellee left the station on the evening of said date between 6:00 and 7:00 o'clock, and returned to her home. After reaching there, she prepared and ate her supper, and took a bath, then put on her night clothes with the view, as she said, of being in readiness for bed after she finished her bookkeeping work for the night. After thus preparing herself, she proceeded to sit down on the couch and do her bookkeeping work. The table with her books on it was then drawn up to the couch. She testified: "When I went to sit down in the living room where the table was at that had my papers on it, this gun was laying on the couch, and I had to move the gun to sit down at this table. When I moved the gun it just went off." As a result of the discharge of the gun, Mrs. Ready sustained an injury which necessitated the amputation of her left thumb, and it is for this injury that compensation is claimed.

The case comes within the class of employees who do part of their work at home. The problem presented by this class of employees under the workmen's compensation law has been dealt with by Larson's Workmen's Compensation Law, Vol. 1, ps. 253-254, as follows:

"A common problem in this field is that of the claimant who performs some part of his work at home. Viewed in one way, the trip home of such an employee may be analogized to the trip from one of the employer's buildings to another via the public streets, which is generally agreed to be within the course of employment. . . . Proctor v. Hoage, 81 F. 2d 555 (1935), one of the leading cases granting compensation, presented these facts: claimant insurance agent worked until late one

night in the company of his superior, who then ordered him to have his report ready by eight the following morning. They parted after a call in the residential area, and claimant was struck by an automobile while starting for home, where he intended to make out his report. Here it is plain that claimant's work was not done. He had to go somewhere to make out this report. It was late at night and the logical place to go was home. In other words, if we could assume that claimant did not want to go home to sleep, he still would have been required to go home to make out his report, and the basic mixed-purpose test is satisfied."

It is the contention of the appellants that the removal of the gun by the appellee was the performance of a part of her household duties and had no connection with her employment. The facts, however, do not sustain the appellants in this contention. The appellee had been accustomed to doing her bookkeeping work in the living room of her home for five years. She sat on the couch in question and worked at a small table drawn up to the couch and on which table she kept the books of the business. On the evening in question, she returned to her home and prepared her supper and took a bath and put on her night clothes in order to be ready for bed when she finished her book work. She then proceeded to the couch to begin her book work when she observed the gun for the first time on the couch. At that time, she had completed all of her household duties and the only work which remained for her to perform was her book work. According to the undisputed testimony, she had to move the gun in order to sit down on the couch where she was to perform her book work. The presence of the gun, therefore, presented a risk to which her employment then exposed her. Her action in removing the gun was not only necessary but reasonable. In removing the gun preparatory to beginning her work on the books, she was performing an act in furtherance of the work in behalf of her employer. She answered in the affirmative

to a question propounded to her on cross-examination, inquiring if in removing the gun, she did not intend to place it in the closet where it was customarily kept. We think it is not material where she intended to put it in order to remove it from the couch, but that the material consideration is that it was necessary to remove it in order to proceed with her work. Since it became necessary to remove the gun in order to proceed with her work, the injury which she received was necessarily connected with the work of her employment. In Larson's Workmen's Compensation Law, Vol. 1, ps. 4 and 5, is found the following:

█ █ ''The right to compensation benefits depends on one simple test: was there a work-connected injury? Negligence, and, for the most part, fault, are not in issue and cannot affect the result. Let the employer's conduct be flawless in its perfection, and let the employee's be abysmal in its clumsiness, rashness and ineptitude: if the accident arises out of and in the course of the employment, the employee receives his award. Reverse the positions, with a careless and stupid employer and a wholly-innocent employee: the same award issues.

''Thus, the test is not the relation of an individual's personal quality (fault) to an event, but the relationship of an event to an employment. The essence of applying the test is not a matter of assessing blame, but of marking out boundaries.''

If the appellee had been doing or about to enter upon the doing of her bookkeeping work in the station or cafe, and the gun had been so left therein as that it was necessary for her to remove it in order to proceed with her work or enter upon her work, and if in removing it the gun had accidentally discharged and injured her, we think it would not be questioned that her injury would be compensable. In our opinion no different result should be reached under the facts of this case merely because the injury occurred in appellee's home. █ █
For five years she did her bookkeeping work in her home.

Her home in fact had become her workshop so far as her bookkeeping work was concerned, and was therefore a recognized part of the employment premises. "The regularity of the work at home may be a strong factor in favor of bringing the trip within the employment, for this has the effect of making the home a recognized part of the employment premises." Larson's Workmen's Compensation Law, Vol. 1, pages 254 and 255.

 Appellee was in the act of engaging in the work on her books when for the first time she observed the gun lying on the couch where she was to sit. It was not only sensible and reasonable but necessary that she remove it in order to proceed with her work. All of her household duties had theretofore been performed and she was then engaged only in the work of her employment. Her injury thus was directly connected with the work of her employment. We think it needs no resort to the rule requiring a liberal construction be given to our Workmen's Compensation Law, in order to hold appellee's injury compensable under the facts of this case.

We are accordingly of the opinion, under the undisputed facts in this case, that the injury which the appellee sustained is one which is compensable as an injury arising out of and in the course of her employment.

The justices participating in the decision of this case are equally divided on the question of the error vel non in the judgment of the trial court. The writer of this opinion and Justices Lee, Arrington, and Ethridge are of the opinion that the judgment of the court below should be affirmed, and Justices McGehee, Roberds, Kyle, and Lotterhos are of the contrary opinion. In view of this division, the judgment of the court below must be and it is affirmed. Gully v. Adams County, 169 Miss. 413, 153 So. 165.

. Affirmed.

*Lee, Arrington,* and *Ethridge, JJ.,* concur in this opinion. Contra, *McGehee, C. J.,* and *Roberds, Kyle,* and *Lotterhos, JJ. Hall, J.,* took no part.

---

ROBERDS, J., dissenting.

This one is just too fantastic. Just why Mrs. Ready had to sit in the exact spot occupied by the gun is a little hard to understand. There was plenty of space for her to sit elsewhere on the couch. There were two chairs in the room, either of which she could have occupied. There were two tables in the room. They weighed about twelve pounds each. She could easily have moved either to any place in the room. This appears to be a case of liability by choice of seats. Sit where the gun was lying —liability; sit in some other place—no liability. Or liability imposed by choice of tables: use the coffee table—no liability; use the table closer to the couch—liability.

Mrs. Ready undertook to move the gun as housekeeper—not as bookkeeper. It was not necessary to remove the gun to do the book work. She could have utilized several other seating places. Of course, as a housekeeper she would have removed the gun from the couch the moment she saw it there. Indeed, the fact of its being upon the couch is, at least, a strange incident. Ready had testified that a short time before that he had oiled and greased it. There is no testimony showing it was not yet oily and greasy. The gun was usually kept in a closet in a room adjoining the living room. Mrs. Ready was not merely removing the gun from the sofa and laying it aside—but she said her purpose was to place it in the closet where it usually stayed. She was acting as a housekeeper—not a bookkeeper—in doing that.

Pages could be consumed citing and quoting from cases under the Workmen's Compensation Act. Perhaps there is no case closer in its facts to those of the

case at bar than Glasser v. Youth Shop, Inc. et al. (Fla. 1951), 54 So. 686. The Florida Statute, as does ours, requires the injury to arise in the course of and out of the employment. There claimant was vice president and manager of the Youth Shop. One of his duties was to record the sales and keep the records of the Shop. For that purpose he took the books home at night and did the book work there, generally in the morning before departing for the Shop. On the morning in question he arose at seven o'clock and worked for an hour on the store records "in an office adjoining his bedroom." He then placed the records in a folder and proceeded to carry them down the stairway to eat his breakfast and then take them to the Shop. In the act of descending the stairway, he fell and injured himself. The Florida Court, in denying the claim, said:

"The purpose of the Workmen's Compensation Act, as expressed in Protectu Awning Shutter Co., et al. v. Cline, 154 Fla. 30, 16 So. 2d 342, 343, is 'to shoulder on industry the expense incident to the hazards of industry; to lift from the public the burden to support those incapacitated by industry and to ultimately pass on to the consumers of the products of industry such expense.' Since industry must carry the burden, there must then be some causal connection between the employment and the injury, or it must have had its origin in some risk incident to or connected with the employment, or have followed from it as a natural consequence. General Properties Company v. Greening, 154 Fla. 814, 18 So. 2d 908; Fidelity & Casualty Co. of New York v. Moore, 143 Fla. 103, 196 So. 495; Sweat v. Allen, 145 Fla. 733, 200 So. 348. While there is a presumption that the claim comes within the provisions of the Act, the claimant is not relieved of the burden of proving that the injury arose out of and in the course of employment. Fort Pierce Growers Ass'n v. Storey, 155 Fla. 769, 21 So. 2d 451.

"When tested by the above rules, appellant's injury cannot be said to have arisen 'out of and in the course of his employment.' The appellant was not on the stairs because of his employment; he would have been there in any event, regardless of whether he had brought his work home from the store. * * *"

I can only emphasize that the object of the Act, as above stated, is to protect from the hazards of industry. This accident did not happen as a result of any hazard or condition existing at the service station or the cafe, nor was the gun connected with, or used in or about any phase of the operation of the business.

*McGehee, C. J.,* and *Kyle* and *Lotterhos, JJ.,* join in this dissent.

---

### ON SUGGESTION OF ERROR

July 3, 1953 35 Adv. S. 12 65 So. 2d 272

HALL, J.

This cause was affirmed on June 8, 1953, by a decision of four Judges with four Judges dissenting. The writer hereof did not participate in the original consideration and decision for the reason that he was temporarily absent because of illness.

The Suggestion of Error raises two questions. One is that the decision on the merits is erroneous. The other is that this Court is powerless to affirm the judgment of the lower court by a vote of four Judges and therefore an attack is made on the last paragraph of the opinion heretofore rendered herein.

The case has been thoroughly reconsidered on the merits by all nine members of the Court and five of us are of the opinion that the original decision on the merits is correct and that the judgment of the lower court should be affirmed. This makes it unnecessary for us to now decide whether a case may be affirmed by four Judges

and the last paragraph of the original opinion herein is accordingly withdrawn and a decision of that question is expressly pretermitted. On the merits of the case the judgment of the lower court is affirmed and the Suggestion of Error overruled.

Suggestion of error overruled.

*Lee, Holmes, Arrington* and *Ethridge, JJ.,* concur as to decision on the merits.

*McGehee, C. J.* and *Roberds, Kyle* and *Lotterhos, JJ.,* dissent as to decision on the merits.

All Judges concur as to withdrawal of the last paragraph of the former opinion.