CHARLOTTE HICKEN v. EBERT-HICKEN COMPANY AND ANOTHER.[1]

April 27, 1934.

No. 29,749.

Lathers & Hoag and Theodore Hollister, for relator.

Abbott, MacPherran, Dancer, Gilbert & Doan, for Ebert-Hicken Company and Columbia Casualty Company, its insurer, respondents.

HOLT, Justice.

Certiorari to review a decision of the industrial commission refusing to award relator compensation for the accidental death of her husband.

The Ebert-Hicken Company of Duluth, Minnesota, is a corporation dealing in real estate and connected businesses such as insurance and renting. Half of the stock of the company was owned by

[1]Reported in 254 N. W. 615.

Mr. George H. Ebert, the president and treasurer, and half by Mr. William A. Hicken, secretary and vice president. The company had no employe except a stenographer, who was also bookkeeper. The office was in the Torrey building. Hicken attended mostly to the office work and Ebert to the outside work. Each drew a salary of $200 a month. Mr. Hicken was 73 years old. He owned two guns, a rifle and a shotgun. He decided to dispose of them and, for that purpose, took them down to the office of the company on August 15, 1932, and placed them in a small cabinet wherein maps and other articles were kept. The next day he advertised the guns for sale in the local newspapers. On the forenoon of August 17 a cleaning rod with rag attached and an oil can on a table in the room where he was killed were noticed by a visitor, to whom Hicken stated that he had advertised the guns for sale and expected a man in to look at them that morning, and that he intended to clean them up. Three or four minutes after the visitor left, a person in an adjoining office, looking through a glass partition, noticed Hicken seated in a chair fronting the small cabinet mentioned, its door open, heard the report of a gun, saw Hicken partially rise up, then immediately slump down. Others also heard the report and rushed in. The guns were out of the cabinet on the floor. They were in their cases. The rifle was discharged, the bullet passing through the case and through the body of Hicken, killing him instantly. Relator petitioned for compensation under the workmen's compensation act. A hearing was had before a referee, who found:

"That the fatal accident which occasioned the death of Wm. A. Hicken on August 17, 1932, did not arise out of any service which he was performing for or on behalf of Ebert-Hicken Company, either as an employe or an officer."

It is unnecessary to note any of the other findings, for this was determinative against relator's claim for compensation. On appeal the industrial commission sustained and adopted the finding quoted and the referee's decision.

Mr. Hicken was momentarily alone in the room when the rifle was discharged, and no living person can tell how it occurred. Mr.

Hicken's statement to his visitor, Mr. Kelly, of his intention to clean the guns, corroborated by the presence of the oil can and cleaning rod made ready for use, lends force to the inference that he was in the act of taking the guns out of the cabinet to make them ready for sale. The guns were his private property. They were in the cabinet for no purpose of the company. Although the accident occurred in the office of the company and during the hours of Hicken's employment there, he could separate himself from the company's work and devote his time to his own purpose. And the inference is more persuasive that he so did when he opened the cabinet door and disturbed the guns he had placed therein than that he was endeavoring to get a map or article kept therein belonging to the company and for use in what he was doing as an officer or servant of the company.

"The instrumentality which admittedly caused the death not being at all connected with the employment, it became necessary to establish that some accident arising out of the employment caused the gun to be discharged." Larsen v. L. A. Larsen Co. 169 Minn. 370, 372, 211 N. W. 330, 331.

This observation in the Larsen case is also pertinent here [169 Minn. 372]:

"It must be clear that in caring for or using a gun taken along for his personal pleasure, Larsen was not acting within the scope of his employment, hence an accident originating solely in such care or use could not be said to arise out of the employment."

Lack of connection between the accident and the employment caused a similar finding to the one here challenged to be sustained in Auman v. Breckenridge Tel. Co. 188 Minn. 256, 246 N. W. 889. In other jurisdictions involving injuries to workmen from the accidental discharge of guns, not handled or present in connection with or furtherance of the employer's business, findings have been sustained that the accident did not arise out of the employment. Ward v. Industrial Acc. Comm. 175 Cal. 42, 164 P. 1123, L. R. A. 1918A, 233; Conaway v. Marine Oil Co. 162 La. 147, 110 So. 181;

Bull v. Wayco Oil Corp. 250 Mich. 51, 229 N. W. 597; De Salvo v. Jenkins, 205 App. Div. 198, 199 N. Y. S. 843 (affirmed 239 N. Y. 531, 147 N. E. 182) ; Beamer v. Stanley Co. 295 Pa. 545, 145 A. 675; Aetna L. Ins. Co. v. Burnett (Tex. Com. App.) 283 S. W. 783. In some of these cases the compensation act was broader than ours.

Relator invokes Kaletha v. Hall Merc. Co. 157 Minn. 290, 196 N. W. 261, where the finding was held not sustained that the accident did not arise out of the employment, this court considering the false beard which was set on fire when the employe lit his cigaret as something which his employment as Santa Claus required him to wear. In Krause v. Swartwood, 174 Minn. 147, 218 N. W. 555, 57 A. L. R. 611, also cited, the employe was poisoned from coffee served at the restaurant at which the employer had directed her to take her lunch so as to be in connection with telephone calls from the employer's office. The circumstances were held to require a finding that the accident arose out of the employment, and the case was distinguished from that of Maxa v. County of Le Sueur, 168 Minn. 65, 209 N. W. 898. In the instant case the evidence is clear that the guns had no connection with the company and were not in the office to serve it in any manner; that they were placed there by Mr. Hicken solely for his own purposes; and that the inference is stronger that he was in the act of taking out the guns to clean them, when accidentally the rifle was discharged, than that he opened the cabinet to obtain something therein for the work for the company on which he was engaged and accidentally upset the guns.

The writ is discharged, and the decision of the industrial commission is affirmed.