Zimmerman, J.
 

 In conformity with modem sociological concepts, the people of Ohio by constitutional amendment (Section 35, Article II, Constitution of Ohio) authorized the passage of laws “establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state” “for the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen’s employment.”
 

 Obedient to this implied mandate, the General Assembly promptly enacted the legislation known as the Ohio Workmen’s Compensation Act. Among its provisions is Section 1465-68, General Code, which states that every employee (within defined classifications) who is injured, and the dependents of such as are killed in the course of employment, shall be compensated out of the State Insurance Fund for loss sustained on account of such injury or death, self-inflicted injuries excepted.
 

 
 *178
 
 Where an employer subject to the Workmen’s Compensation Act does not contribute to the State Insurance Fund, but is a self-insurer or a non-complying employer, other provisions of the Act prescribe the manner of determining compensation and enforcing its payment. (Sections 1465-69, 1465-72,1465-74, General Code.)
 

 This court has often interpreted the phrase “in the course of employment” as used in the Constitution and statutes, and has consistently held that it refers only to an injury which is the result of or arises out of the employment. No injury having its cause outside of and disconnected with the employment is contemplated, even though the employee at the time may be engaged in the work of his employer in the usual way. v And it is essential for a claimant to establish that the employment had a causal connection with the injury, either through its activities, its conditions or its environment.
 
 Fassig
 
 v.
 
 State, ex rel. Turner, Atty. Genl.,
 
 95 Ohio St., 232, 116 N. E., 104;
 
 Industrial Commission
 
 v.
 
 Weigandt,
 
 102 Ohio St., 1, 130 N. E., 38;
 
 Grabler Mfg. Co.
 
 v.
 
 Wrobel,
 
 125 Ohio St., 265, 181 N. E., 97;
 
 Industrial Commission
 
 v.
 
 Lewis,
 
 125 Ohio St., 296, 181 N. E., 136;
 
 Industrial Commission
 
 v.
 
 Bankes, 127
 
 Ohio St., 517, 189 N. E., 437;
 
 Industrial Commission
 
 v.
 
 Gintert,
 
 128 Ohio St., 129, 190 N. E., 400, 92 A. L. R, 1032.
 

 A statement which has met with much favor in many courts of different jurisdictions - and has been frequently quoted is found in
 
 McNicol's Case,
 
 215 Mass., 497, 102 N. E., 697, L. R. A. 1916A, 306. There Chief Justice Rugg of the Supreme Judicial Court of Massachusetts says that “An injury is received ‘in the course of’ the employment when it comes while the workman is doing the duty which he is employed to perform. It ‘arises out of’ the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection be
 
 *179
 
 tween the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises ‘out of’ the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence. ’ ’
 

 General definitions are all very well. The difficulty arises in applying them to the facts of a particular case. Turning to the instant case, there can be no doubt that Hurst was an employee entitled to the benefits of the Workmen’s Compensation Act. Neither can there be doubt that his injury occurred in the course of his employment; but did it result from or arise out of such employment? Can we reasonably trace a causal connection between the injury sustained and the nature of his work? Was it an incident fairly to be anticipated?
 

 In the first place, it must be admitted that the “gun” was an instrumentality which had nothing to do with the employer’s business of selling gasoline and other petroleum products. Its location on the employer’s premises constituted a risk or peril not contemplated by the contract of service. In fact, the contrary is so when we recall the definite instructions
 
 *180
 
 given Hurst not to resist holdup or robbery. Hurst himself was responsible for the gun’s presence, not for the protection of the employer’s property at the employer’s request, but in response to a suggestion of .a fellow employee who was thinking primarily of his personal safety. The employer never knew that the gun existed until after the accident, and of course did not acquiesce in its presence. Pursuing this line of reasoning it becomes difficult to perceive a causal relationship between the injury and the employment.
 

 In the case of
 
 Vincennes Bridge Co.
 
 v.
 
 Industrial Commission,
 
 351 Ill., 444, 184 N. E., 603, this language appears: “The employee may not unnecessarily increase the risk of injury beyond that contemplated in his contract of service * * * and there must be a proximately causative relation between the nature of his work and the injury, so that it may be sure that the injury had its origin in a risk connected with the employment, from which the injury, though, unforeseen, may after the event be recognized to have flowed as a rational consequence.” And in
 
 United Disposal $ Recovery Co.
 
 v.
 
 Industrial Commission,
 
 291 Ill., 480, 126 N. E., 183, it is definitely held that where an employee engages in a voluntary act not accepted by or known to his employer and outside the duties for which he is employed and is injured, the injury does not arise out of his employment.
 

 Two cases of interest heretofore before this court, involving injury to employees during “horse-play” on the employer’s premises, are
 
 Industrial Commission
 
 v.
 
 Weigandt
 
 and
 
 Industrial Commission
 
 v.
 
 Bankes, supra.
 
 In the former an employee admittedly in the course of his employment was struck in the eye and injured by a file which flew from its handle during a friendly scuffle for its possession between two other employees. The injured employee’s right to an award of compensation was upheld because “the scuffle for
 
 *181
 
 the file between the other employes was a thing not at all unlikely to occur. It was an event of the sort that is of frequent occurrence between workmen. * *
 
 *
 
 The injury in this case was caused by an occurrence occasioned in the environment, and it was an injury ‘occasioned in the course of the employment’ and because of the employment.” In the latter, compensation was denied the employee, it being held in the third paragraph of the syllabus: “An injury resulting from sportive play by fellow employees, instigated and engaged in by the injured employee while on duty, is not caused by or connected with the workman’s employment within the purview of the Workmen’s Compensation Act.” In the course of the opinion, the remark is made: “As held in the
 
 Weigandt case, supra,
 
 playful and sportive acts of employees other than the one injured are naturally and reasonably to be expected from the association of men in common work, and do constitute part of the hazard of the environment. A different situation is presented where a claimant himself instigates and participates in such sport. Then the employee himself, and not the environment, creates the hazard.”
 

 In considering all workmen’s compensation cases it must be remembered that it is not the purpose of the Workmen’s Compensation Act to make the employer an absolute insurer of the employee’s safety, but only to afford protection to the employee against risks and hazards incident to the performance of the employer’s
 
 work;
 
 such risks and hazards as are caused or created by reason of the employment.
 

 The trouble we find in the present case is to connect the injury with the work Hurst was employed to do. Causing the gun to be brought onto the employer’s premises was Hurst’s own unauthorized act, bearing no reasonable relationship to the services he was engaged to render. He thereby became subject to a dan
 
 *182
 
 ger of Ms own creation, to which the performance of his duties, did not expose him; a danger not fairly within the anticipation of Ms employer; an added peril foreign to the contract of hire. Of course, if Hurst had been shot by robbers at the service station in the course of his employment, quite a different question would be presented.
 

 The Supreme Court of Colorado flatly holds in the third paragraph of the syllabus of
 
 Industrial Commission
 
 v.
 
 Enyeart,
 
 81 Colo., 521, 256 P., 314, that “An accident which is the result of a cause brought onto the employer’s premises by the workman himself for his own purposes is not caused by his employment and does not arise out of it.” Regarding this statement the opinion says: “There is no case in this court, nor, so far as we know, in any court, in conflict with this proposition.”
 

 Cases from other jurisdictions holding that where an employee is injured by .the accidental discharge of a firearm, under circumstances not connected with the employer’s business, compensation should be refused because the injury is not attributable to an accident arising out of the employment, are:
 
 Ward
 
 v.
 
 Industrial Accident Commission of California,
 
 175 Cal., 42, 164 P., 1123, L. R. A. 1918A, 233;
 
 Conaway
 
 v.
 
 Marine Oil Co.,
 
 162 La., 147, 110 So., 181;
 
 Bull
 
 v.
 
 Wayco Oil Corp.,
 
 250 Mich., 51, 229 N. W., 597;
 
 Bearner
 
 v.
 
 Stanley Co. of America,
 
 295 Pa., 545, 145 A., 675;
 
 Aetna Life Ins. Co.
 
 v.
 
 Burnett
 
 (Tex. Com. App.), 283 S. W., 783;
 
 Hicken
 
 v.
 
 Ebert-Hicken Co.,
 
 191 Minn., 439, 254 N. W., 615;
 
 Finck
 
 v.
 
 Galloway,
 
 139 Kan., 173, 29 P. (2d), 1091.
 

 In this case we are unable to trace any causal relationship .between Hurst’s unfortunate injury and his employment, nor' can we find that such injury resulted from or arose out of the employment within, the purview of the Workmen’s Compensation Act. Therefore,
 
 *183
 
 the judgment of the Court of Appeals is reversed and that of the Court of Common Pleas affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Stephenson, Williams and 'Matthias, JJ., concur.
 

 Jones and Day, JJ., not participating.