EARNEST *v.* INTERSTATE LIFE & ACCIDENT INSURANCE COMPANY.

No. 41423          April 25, 1960          119 So. 2d 782

*Burgin & Gholson,* Columbus, for appellant.

*Young, Daniel & Coker,* Jackson, for appellee.

ETHRIDGE, J.

In this workmen's compensation claim, appellant Nathan V. Earnest, an insurance salesman, lost his foot as the result of a gunshot wound from his own gun. He argues that the injury was work connected, since he was at the rural home of a prospective customer when the accident occurred. The attorney-referee awarded compensation, but the Commission denied it, and its order was affirmed by the circuit court. Under the imported danger doctrine, we think the hazard was brought onto the employment premises by the claimant himself, was a risk unrelated to the employment, and did not arise out of the employment; and further, at the time claimant was injured he had deviated from his job and the injury did not occur in the course of his employment.

Earnest was employed by Interstate Life & Accident Insurance Company to solicit and sell insurance policies on a specific route in the vicinity of Columbus, Mississippi. He was on friendly terms with Grover C. Brandon who lived out of Columbus. He had previously written policies on the four children of O'Neal Brandon, who lived with his father, Grover. Earnest obtained a waiver

from the insurance company on Grover Brandon's age, and drove to his home for the purpose of taking him to a doctor for medical examination. Brandon requested Earnest to wait until he could shave, so claimant was "killing time" until his customer was ready.

He saw O'Neal Brandon some distance away from the house, working near the barn. He had previously discussed a policy of insurance with O'Neal, who could not qualify at the time because of a stomach ulcer. Claimant testified he was going to talk to O'Neal about a policy while waiting for Grover. He walked a short distance toward him, and then returned to his car and picked up his shotgun. Claimant was interested in guns and carried one with him wherever he went, for the purpose of shooting any available birds. He lifted from his car his 12-gauge shotgun for the purpose of shooting some crows, which he had seen earlier flying in the vicinity. He liked to shoot a gun, and stated that if he saw a crow he intended to shoot him. He put a shell in the gun and walked about four steps toward where O'Neal was working when the gun accidentally discharged, hit him in the left ankle, as a result of which the lower part of that leg had to be amputated.

Claimant stated he planned to tell O'Neal that if his father's application was approved, he would try to get approval of an insurance application for him. However, he frankly said that he obtained the gun to shoot a crow.

Grover Brandon testified that he and his wife heard Earnest call for help, and, after they put a tourniquet on his leg, Earnest told him he had picked up his gun and was loading it to go down in the woods and shoot some crows. He did not remember him saying anything about going to see O'Neal. Paul Salley, the staff manager for appellee insurance company, said Earnest stated to him that while he was waiting for Grover Brandon, he (claimant) decided to get his gun and shoot a crow. He knew claimant carried the gun in his car and liked to

shoot, but gave him no instructions about it one way or the other.

The Workmen's Compensation Commission denied coverage. It found that claimant deviated from his employment and obtained a dangerous instrumentality not connected with his work, for his own personal pleasure; and these acts were risks not incident to his employment. On this appeal, claimant argues that his only purpose in being on the Brandon property was to sell insurance, and, when injured, he was at a place where he was supposed to be, fulfilling his duties. It is further asserted that under the dual purpose doctrine, although claimant carried his shotgun for personal pleasure, he was also performing his job in trying to sell insurance, both to Grover and O'Neal Brandon.

■■ ■ An injury arises out of the employment when there is a causal connection between it and the job. 58 Am. Jur., Workmen's Compensation, Sec. 211; Brookhaven Steam Laundry v. Watts, 214 Miss. 569, 59 So. 2d 294 (1952). Claimant was not required to carry the gun. Its possession by him when it discharged was not connected with his employment. The injury did not arise out of the employment. Discussing similar questions, 1 Larson, Workmen's Compensation Law, Secs. 12.30, 12.31 and 12.32 states: "The term 'imported danger' has been contrived here to provide a convenient label for a class of cases in which the source of the injury was a hazard brought onto the employment premises by the claimant himself. . . . Let us start with the most extreme case on record—a case so improbable and so well-adapted to the illustration of the imported risk idea that it sounds as though it must be a hypothetical situation invented by a law professor: in Bogavich v. Westinghouse Electric and Manufacturing Co., 162 Pa. Super, 388, 57 A. 2d 598 (1948), deceased Bogavich, for no known reason, carried a homemade bomb about with him under his shirt. While he was at work, it went off, again for no known reason, and killed him. Compensation was denied.

Presumably no one would quarrel with this result, nor with the general principle that imported dangers do not arise out of the employment when exemplified by such a clear case. The same principle rendered non-compensable an accident in which the claimant was injured by the discharge of his own shotgun as he removed it from the back seat of his car preparatory to taking a business trip. Aetna Life Insurance Co. v. Burnett (Tex. Comm. App., 283 S. W. 783 (1926). . . . The principle is relatively easy to accept when the imported risk takes the form of an unequivocally 'dangerous instrumentality' like firearms or explosives. . . . In choosing between these two lines of cases, one should note that the heart of the issue is not really the dangerousness of the thing brought upon the premises, but the relation of that thing to the employment. Bogavich's bomb and Burnett's shotgun had no conceivable link with the employment . . .''

██ ■ Earnest admitted he carried the gun for his own personal pleasure, and it had no connection with his job. The risk was unrelated to the employment, as distinguished from the mere increasing of hazards from employment by the employee using some article which proves to be dangerous, such as matches, defective clothing, etc. 1 Larson, Ibid., Secs. 12.34, 12.35. Somewhat similar cases denying compensation are Hendrix v. Franklin State Bank, 154 Tenn. 287, 290 S. W. 30 (1926); Aetna Life Insurance Company v. Burnett, 283 S. W. 783 (Tex. Civ. App. 1926); Hicken v. Ebert-Hicken Company, 191 Minn. 439, 254 N. W. 615 (1934). In short, appellant's injury did not arise out of his employment.

Joe Ready's Shell Station & Cafe v. Ready, 218 Miss. 80, 65 So. 2d 268 (1953), involved a gunshot wound which was causally related to the claimant's job and thus is distinguishable. In Persons v. Stokes, 222 Miss. 479, 76 So. 2d 517 (1954), claimant was employed to hunt the employer's cows, and, while so engaged, turned aside from that job to shoot at a squirrel. The shot ricocheted

and hit him in the eye. It was held the injury did not arise out of the employment, since there was no causal connection between it and the conditions under which the work was required to be performed. It was not a risk to which his employment exposed him. See also Collier v. Texas Construction Co., 228 Miss. 824, 89 So. 2d 855, 90 So. 2d 390 (1956).

■■■ Secondly, the claimant's injury did not occur in the course of his employment, but at a time he had turned aside on a personal mission of his own. When claimant retraced his steps to his car for the purpose of getting his gun to shoot a crow, he turned aside on a personal mission, and was acting on that personal mission at the time he was injured. I Larson, Workmen's Compensation Law, Sec. 18.41. During this deviation from his employment, he was not in the course of his work activities. Person v. Stokes, *supra;* T. C. Collier v. Texas Construction Co., *supra.*

Affirmed.

*McGehee, C. J.,* and *Lee, Kyle* and *Gillespie, JJ.,* concur.