ETHRIDGE, Chief Justice:
This workmen’s compensation case involves an employee killed by a pistol while waiting near the employer’s premises for the beginning of the annual Christmas dinner, sponsored by the employer. The Workmen’s Compensation Commission, upholding its attorney-referee, awarded death benefits to the dependents of the deceased, Willie P. Jones. The Circuit Court for the First Judicial District of Hinds County affirmed. The commission awarded compensation benefits on the theory that Jones’ death was in the course of employment, was unexplained, and hence the presumption of causal connection was not rebutted by defendants.
We reverse and hold: (1) Since both the work activities and cause of death were explained, the presumption of causal connection does not apply; and (2) Jones’ death did not arise out of his employment, for two reasons. It occurred either by him accidentally firing his pistol, or by suicide; and under the imported danger doctrine, possession of the pistol had no relationship to the employee’s job.
On December 22, 1967, Jones was working for Space Steel Corporation as a foreman over steel erection crews constructing buildings. The general superintendent was Edward Campbell, Jr. Jones was furnished a van-type truck supplied with replacement tools and equipment to be used, if needed, by the erection crews. His duties also included keeping time records of the different crews and assisting the foremen upon request. He was paid weekly and had no fixed daily hours of work.
For the two weeks before December 22, Jones had been working for his employer in Florida. For this trip he obtained the employer’s permission to use his personal automobile, and the employer agreed to reimburse him for his traveling expenses. It is not known precisely when Jones returned from Florida, but his wife testified that he spent the night preceding December 22 at his home with her, and that he left on the morning of his death in good spirits and with no apparent worries.
On the night of December 21, Jones with his wife had attended a company party provided by Space Steel Corporation. It lasted into the early hours of the morning. On December 22 Jones came to the employer’s place of business around 8:30-9:00 a.m., and told Campbell that he had not slept much the night before. The company had declared the afternoon of December 22 to be a half holiday with pay for its employees. Campbell told Jones that if he wished, he could go somewhere and get some sleep. However, Jones was in and out of the employer’s premises several times, and went at Campbell’s request to check a construction job. Space Steel had arranged to provide a Christmas dinner on the premises of the company, and dinner was to be served around 12:30-l :00 p.m.
Charlie Winford, an employee, was cleaning the sheet metal room. The building had a large 12 x 12 foot door on the south side of a publicly owned driveway used at that time exclusively by the company. Winford said that he saw Jones sitting in the car parked on the side of the street next to the building. In fact he observed him drive in and out two or three times. On this occasion, Jones had been sitting in his car for about an hour. About 11:45 a.m., Winford said that he heard a shot, looked up and saw the door on the driver’s side fly open. Campbell rushed out and found Jones lying on the ground, with one foot hanging inside the car. He was breathing, but before the ambulance took him away, Campbell was of the opinion that Jones was dead. Campbell denied that the company had agreed to or would have paid Jones for use of his personal car that morning. He said that the *809 company van was ready and available for his use.
A pistol was found lying on the right side of the front seat of the car. It is manifestly inferable that this was the pistol which was fired and killed Jones. He was killed by a single shot through the chest. Mrs. Jones identified this gun as the .22 calibre pistol which belonged to her husband and which he carried in his automobile.
The attorney-referee found that Jones died as a result of a gun-shot wound in his chest, and that “there were no eyewitnesses to the shooting to report whether such was accidental, self-inflicted or by the act of some unknown person.” He further stated that Jones was about his work and engaged in the duties of his job at the time and place of his death, and that “a rebuttable presumption arose, that the deceased met his death as a result of an injury arising out of and in the course of his said employment. * * * [and] the defendants failed to present the proof necessary to rebut or explain away the * * * presumption. * * * ” The commission adopted that decision and the circuit court affirmed.
The commission was justified in finding that at the time of his death Jones was in the course of his employment. Jones was on duty that morning, as evidenced by his inspection of the work of one of the erection crews. Further, he was parked on the short dead-end street, used exclusively by the company and immediately adjacent to its plant, and thus was virtually and constructively on the company’s premises. Waiters were preparing tables for the company sponsored and financed Christmas dinner for all employees. Although employees were not required to attend, they were encouraged to do so and regarded it as an employment benefit. Moreover, the employer benefit-ted from the event in better employee relations and morale. 1 Larson, Workmen’s Compensation Law §§ 22.00, 22.23 (1968).
 Although Jones was in the course of his employment, the commission erred in applying the presumption of causal connection. The presumption arises when an employee is found dead in the course of his employment, and the cause of death or his work activities are unexplained. Southern Brick & Tile Co. v. Clark, 247 So.2d 692 (Miss.1971). Here the employee’s work activities, if any, at the time of his death are known. He was waiting in his car for the company-sponsored Christmas dinner. Also, the cause of Jones’ death is known: a gunshot wound to his chest from his own pistol found lying on the seat of the car in which he was sitting. The evidence negatives any theory of death caused by another party, much less any assumed other party shooting Jones because of his employment. Logically this leaves only suicide or an accidental firing of the pistol by Jones. His wife’s testimony tends to negative suicide, and points clearly to an accident.
Moreover, the gun had no connection with Jones’ employment. The doctrine of “imported danger” refers to that class of cases in which the source of the injury was a hazard brought onto the employment premises by the claimant himself. The heart of the issue is whether the pistol had any relation to the employment. The evidence reflects that it had none. Earnest v. Interstate Life & Accident Ins. Co., 238 Miss. 648, 119 So.2d 782 (1960). In short, since the presumption of causal connection is not applicable, the undisputed evidence shows that the injury and death did not arise out of the employment.
Burnham Van Lines v. Moore, 250 Miss. 165, 164 So.2d 733 (1964), was decided on two major points not relevant to this case. Appellants virtually conceded that the truck driver’s death arose out of his employment. Moreover, the facts in that case are materially distinguishable.
Reversed and judgment rendered here for appellants.
RODGERS, PATTERSON, SMITH and ROBERTSON, JJ., concur.