749 So.2d 342 (1999)
HURDLE AND SON and Ms Casualty Insurance Company, Appellants.
v.
Michael A. HOLLOWAY, Appellee.
No. 1998-WC-01481-COA.
Court of Appeals of Mississippi.
October 5, 1999.
*344 George E. Read, Oxford, J. Keith Pearson, Greenville, Attorneys for Appellants.
James Kizer Jones, Holly Springs, Barrett Jerome Clisby, Holly Springs, Attorneys for Appellee.
BEFORE McMILLIN, C.J., BRIDGES, AND PAYNE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. This case originated as a proceeding before the Mississippi Workers' Compensation Commission. Michael Holloway sought a determination that injuries he sustained in a vehicle accident were jobrelated and, thus, compensable. The Commission found for Holloway and Holloway's employer and the employer's compensation carrier appealed that ruling to the Circuit Court of Marshall County with unfavorable result. The employer and carrier have now appealed to this Court seeking a reversal of the Circuit Court's decision to affirm the Commission. Upon review of the record, this Court has decided that the award of compensation should be affirmed.

*345 I.

Facts
¶ 2. Holloway was employed by Hurdle and Son, a partnership engaged in a farming operation in Marshall County. The partners in the business, according to the record, were J.K. Hurdle and his wife, Kay Hurdle. Holloway worked as a farm laborer, completing those tasks of manual labor that were assigned to him. His primary supervisor was J.K. Hurdle but, in J.K. Hurdle's absence, Holloway received instructions from another employee who was also his uncle, Dornell Holloway. Sam Hurdle, the eighteen-year-old son of J.K. Hurdle by a former marriage, also worked in the farming operation and, on occasion, relayed work instructions from his father to the other laborers on the farm.
¶ 3. The employer waived its statutory exemption and voluntarily assumed liability for benefits to its employees under the state's workers' compensation laws by purchasing workers' compensation insurance as permitted by section 71-3-5 of the Mississippi Code.
¶ 4. Michael Holloway did not own a vehicle and it was his usual custom to catch rides to and from work with his uncle. The evidence indicated that, when Dornell Holloway was unable for any reason to provide transportation, the Hurdles had a standing policy that either Sam Hurdle or J.K. Hurdle would provide the necessary transportation for Michael Holloway to get to and from the farm.
¶ 5. On the day that Holloway was injured, he did not ride home at the end of the work day with Dornell Holloway because Sam Hurdle had asked him to remain and help him work on a non-functioning farm truck. Sam Hurdle planned to replace the engine in the truck and needed assistance in that endeavor. There was testimony that the truck belonged to the farm and that, if the repairs were successful, the truck would be used by Sam Hurdle for his own personal use as well as being available for use on the farm. J.K. Hurdle was out of the country on the day of the accident and there was some dispute in the testimony as to whether Michael Holloway agreed to assist in working on the truck as a personal favor to Sam Hurdle or whether his work was a required duty as a part of his employment. Dornell Holloway, for example, testified that he had assisted Sam Hurdle in working on the truck after Michael Holloway's injury. He said this occurred on a weekend and that he had neither expected nor received payment for that time from Hurdle and Son. However, J.K. Hurdle testified that he "had given permission [to Sam Hurdle] to get the employees to help him work on that truck out there."
¶ 6. Sam Hurdle testified that he and Michael Holloway left the farm temporarily in the late afternoon, at which time Sam Hurdle supplied the money to purchase twelve beers. The beers were actually bought by Michael Holloway because Sam Hurdle was under the legal age to make such a purchase. The two then returned to the farm where they worked on the truck and each consumed a number of beers. Sam Hurdle estimated that he drank approximately six of the beers.
¶ 7. At some time later in the evening, the two ceased work and left the farm together in Sam Hurdle's vehicle, which was also owned by the farm and apparently served a dual role as Sam Hurdle's personal vehicle and, on occasion, as an instrument to perform duties associated with the farming operation. Only a few hundred yards after leaving the farm property and entering a public highway, Sam Hurdle testified that the truck experienced a blow-out of one of its tires, causing him to lose control. The truck flipped over, seriously injuring Holloway. Hurdle was charged with driving under the influence of intoxicants and ultimately pled guilty to the charge.
¶ 8. Holloway filed a claim for workers' compensation benefits due him for his injuries, claiming they were job-related. His *346 employer defended and raised several matters in defense, all of which the Commission rejected. Hurdle and Son urges in this appeal that the Commission erred in its rulings on these defenses. The specific issues raised on appeal are as follows:
(A) Hurdle and Son claims that Holloway, at the time of his injury, was not acting within the course and scope of his employment but was on a personal adventure with a fellow employee that was not related to the duties of his employment.
(B) The employer claimed alternatively that Michael Holloway had ceased any duties incident to his employment and was traveling home at the time of his injurya circumstance that bars compensability under the "going and coming" rule.
(C) Hurdle and Son advances the proposition that Holloway imported the risk that actually caused his injury by participating in the purchase and consumption of beer while on the joban activity not permitted by his employer and not in furtherance of his employer's interests.
(D) Finally, Hurdle and Son argues generally that certain findings of fact by the Commission were not supported by substantial evidence in the record.
¶ 9. We will deal with those issues in the order set out above after some preliminary observations on the limited scope of our inquiry in matters such as this.

II.

The Scope of Our Review
¶ 10. Determinations of compensability for injuries alleged to be work-related and, thus, covered under Mississippi's workers' compensation statutes, are, in the first instance, vested in an administrative agency known as the Mississippi Workers' Compensation Commission. Thyer Mfg. Co. v. Mooney, 252 Miss. 629, 638, 173 So.2d 652, 656 (1965); Miss.Code Ann. § § 71-3-1 to 71-3-127 (Rev.1995 and Supp.1998). Though the laws establishing this scheme of compensating laborers for their job-connected injuries contemplate judicial review of the Commission's decisions, that review is substantially limited. It involves an inquiry into whether there is substantial evidence in the record to support the Commission's determination, or whether, because of lack of supporting evidence, the Commission's decision can fairly be said to be arbitrary and capricious. Georgia Pacific Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991). There is a second area of inquiry that may be appropriate, which involves a determination of whether the Commission has misconstrued or misapplied the law applicable to its decision process. Id.
¶ 11. The judicial search for substantial evidence to support the Commission's decision does not extend so far as to permit the reviewing court to re-weigh the evidence and determine where it concludes the preponderance of the evidence might lie. Natchez Equip. Co. v. Gibbs, 623 So.2d 270, 273-74 (Miss.1993). Rather, it has been said that, if the appellate court concludes that there is substantial credible evidence supporting the Commission's decision, then the work of the Commission must be affirmed. Id.
¶ 12. Keeping in mind the limited scope of our review, we will proceed to consider the issues presented by Hurdle and Son in this appeal.

III.

Issue One: Course and Scope of Employment.
¶ 13. The Commission concluded that Holloway's efforts to assist Sam Hurdle in repairing a non-working farm truck were within the course and scope of his employment. This was a finding of fact. Therefore, so long as there is substantial evidence in the record to support that finding, this Court may not interpose its own view of the matter even were it to determine that the weight of the evidence was to the contrary. Hollingsworth v. I.C. *347 Isaacs & Co., 725 So.2d 251 (¶ 11) (Miss. Ct.App.1998). Hurdle and Son argues vehemently that Sam Hurdle and Michael Holloway had embarked on a purely personal pursuit of repairing an older truck owned by the farm but no longer useful in the farming operation, and there is certainly evidence in the record to support the proposition. The testimony of J.K. Hurdle makes clear that he did not consider repair of the truck to be something vital to the furtherance of the farming operation. Nevertheless, he admitted that he had authorized his son, Sam Hurdle, to obtain the assistance of the remaining farm employees to repair the truck. If the repair efforts were simply a personal pursuit of Sam Hurdle for which he enlisted the aid of a co-worker on a voluntary business, it is difficult to see why the employer's permission was required. Even if those repair efforts were dismissed by J.K. Hurdle as nothing more than a father's indulgence of his son's personal desires, the fact that the senior Mr. Hurdle specifically authorized his son to utilize other employees in pursuit of the repairs supports the reasonable conclusion that Michael Holloway was expected to lend assistance when requested to do so, and that such assistance was a part of his duties as an employee of Hurdle and Son. That conclusion is not changed by the fact that the evidence is scant that Sam Hurdle himself had any general supervisory authority over Holloway. So long as Sam Hurdle was directing Holloway as to the truck repair project, he was, in effect, relaying a directive issued by J.K. Hurdle himself, who certainly could require Holloway to render such assistance as a term of his employment.
¶ 14. Neither are we persuaded by the fact that the work on the truck and the ensuing accident both took place outside of Michael Holloway's normal work hours. The evidence indicates that work hours were only loosely observed in this farming operation and that the primary consideration in measuring the workday was whether the necessary tasks for the day had been accomplished. So long as Sam Hurdle had the authority (as specifically delegated to him by J.K. Hurdle) to direct Michael Holloway to remain after Dornell Holloway left work in order to assist in efforts to repair the non-functioning truck, it is largely irrelevant that this marked a deviation from a customary work day.
¶ 15. In view of (a) Michael Holloway's position as the provider of common labor on a farming operation, (b) Sam Hurdle's close familial connection to J.K. Hurdle, and (c) evidence that J.K. Hurdle authorized his son to obtain the assistance of Michael Holloway in his efforts to rehabilitate the truck, we are satisfied that Michael Holloway was entitled to conclude that Sam Hurdle's request that he render assistance in repairing the vehicle was a duty associated with his employment and not merely a personal request for a favor from a fellow employee. As we have observed, there is evidence in the record to support either proposition; however, that is certainly not an uncommon occurrence in a contested proceeding. Keeping in mind that the law suggests the need to construe the laws pertaining to workers' compensation liberally in favor of compensability of claims (see, e.g., Dixie Contractors, Inc. v. Ashmore, 349 So.2d 532, 535 (Miss.1977)), we can find nothing in this record that suggests the propriety of this Court substituting its own view of the circumstances surrounding Holloway's work at the farm for that reached by the Commission. The phrase "substantial evidence," when used in the context of workers' compensation law, has been said to mean
something more than a mere `scintilla' of evidence, and that it does not rise to the level of `a preponderance of the evidence.' It may be said that it `means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of *348 fact from which the fact in issue can be reasonably inferred.'
Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991) (citations omitted). When viewed in that light, we are satisfied that there is substantial evidence in this record to support the Commission's finding that Holloway was involved in a job-related endeavor while assisting Sam Hurdle in repairing the farm truck.

IV.

Issue Two: Whether Holloway's Claim is Barred by the "Going and Coming" Rule
¶ 16. There is a long-standing rule in the law of workers' compensation that, in the case of an employee having a fixed place of employment, the employee and not the employer generally assumes the hazards associated with going to and from the place of employment. See, e.g., Miller Transporters, Inc. v. Seay, 350 So.2d 689, 691 (Miss.1977); Edward Hyman Co. v. Rutter, 241 Miss. 301, 306, 130 So.2d 574, 576 (1961); ARTHUR LARSON AND LEX LARSON, LARSON'S WORKERS' COMPENSATION LAW § 13.01 (1999). Thus, injuries received while in transit to or from the job are generally not deemed a compensable injury under workers' compensation laws. However, there are exceptions to that rule. Numbered among the generally-recognized exceptions is one where the employer assumes responsibility for the employee's transportation, either by advancing funds to cover the costs of travel or by providing that transportation in company-owned or company-hired conveyances. Matheson v. Favre, 586 So.2d 833, 834 (Miss.1991); Pace v. Laurel Auto Parts, Inc., 238 Miss. 421, 118 So.2d 871, 874 (1960); LARSON, supra § 14.07. Thus, an employee traveling by public conveyance at the direction of his employer is deemed to be on the job while in transit. Katz v. Katz, 137 Conn. 134, 75 A.2d 57, 58-59 (1950); LARSON, supra § 14.07[2]. Similarly, when a company has an informal policy of permitting employees to meet company-owned delivery trucks and catch a ride to work, an injury to an employee received while riding in such a truck has been held compensable. Holcomb v. Daily News, 45 N.Y.2d 602, 412 N.Y.S.2d 118, 384 N.E.2d 665, 667 (1978); LARSON, supra § 15.03.
¶ 17. Injuries received while traveling in company-related conveyances have been found to be compensable whether the employer is furnishing the transportation as a part of a formal term of employment or whether the arrangement is merely an informal custom and practice that has arisen over time with the employer's consent or tacit acquiescence. LARSON, supra §§ 15.01 and 15.03. However, the general rule in most jurisdictions still appears to be that this exception to the "going and coming" rule does not apply when the transportation is nothing more than a one-time or infrequent occurrence. For example, in the case of Arnold v. Wright, when an employee missed the bus and was unable to get to work on time, the employee's superior picked her up at home in a company owned vehicle to bring her to work. Arnold v. Wright, 80 N.Y.S.2d 808, 808 (N.Y.Sup.Ct.1948). On the way back to work, the employee was injured in an automobile accident. Id. The court held the injuries were not compensable in this situation because the transportation was not provided as a part of a formal or informal arrangement by the employer. Id. See also, LARSON, supra § 15.03. Larson's treatise suggests that the trend is away from drawing such a distinction in determining issues of compensability, but we do not think it necessary to resolve that question in this case.
¶ 18. In the case now before us, the Commission found that Hurdle and Son had a custom and practice, albeit informal, of providing transportation on some regular basis to Holloway. Specifically, in the administrative judge's findings as adopted by the Commission, there appears the following:
6. Both the owner of the Employer, J.K. Hurdle, and his son, Sam Hurdle, *349 provided transportation to and from work for Claimant on a consistent basis, at least 20% of the time. These facts are undisputed.
¶ 19. Hurdle and Son strenuously contests this finding, indicating that there is not substantial evidence in the record to support the proposition. The testimony of the claimant himself was that he normally rode to and from work with his uncle, Dornell Holloway. There is no indication that this transportation arrangement had either the official or unofficial sanction of Michael Holloway's employer. Nevertheless, there was also testimony to the effect that the principals of Hurdle and Son were aware that Michael Holloway did not have his own means of transportation and that there was a standing arrangement that, in those circumstances when Dornell Holloway was unable to provide transportation to his nephew for any reason, either J.K. Hurdle or Sam Hurdle would provide such transportation. Sam Hurdle provided the estimate that Mike Holloway rode to and from work with Dornell Holloway eighty percent of the time, from which the Commission appears to have extrapolated the finding that either J.K. Hurdle or Sam Hurdle must have been providing the transportation the remaining twenty percent of the time.
¶ 20. There was other testimony in the record, including from the claimant himself, that would seem to cast some doubt as to whether this alternate means of transportation was provided with such a high degree of frequency. However, it would still appear that the evidence would support a finding that there was a standing custom or practice, mutually beneficial to both the employer and Michael Holloway, to provide him with transportation at any time he was not able to obtain a ride with his uncle. This arrangement, even though the need for it may have arisen with a frequency of less than twenty percent of the time, remains distinguishable from the situation where, in isolated and unusual circumstances, an employer might occasionally provide transportation to an employee as a one-time accommodation.
¶ 21. Therefore, we conclude that we are without any basis to disturb the Commission's finding that provision of transportation by the employer for Michael Holloway to get to or from work in those instances when he could not catch a ride with his uncle was an informal custom and practice that took such transportation out of the "going and coming" rule and made an injury received by Holloway while in transit a job-related injury. Thus, if Holloway is to be denied compensation on this claim, it must be upon some theory other than this one.

V.

Issue Three: Importation of the Risk
¶ 22. A workers' compensation claim may be denied in those circumstances where an employee purposely creates some risk at the job that is unrelated to the work expected of that employee and the employee is injured in a way that is attributable to that non-job-related risk. LARSON, supra, § 9.03. Mississippi case law recognized the "imported risk" bar to a compensation claim in a case where an insurance agent accidentally shot himself with his own shotgun, which he carried with him in his car, as he waited to carry a customer to a doctor's examination. While he was waiting on the customer, the agent retrieved his gun to shoot a crow and accidentally shot himself in the foot. Earnest v. Interstate Life & Accident Ins. Co., 238 Miss. 648, 119 So.2d 782, 782-83 (1960). In another case, an employee shot and killed himself with his own pistol while waiting on his employer's premises for the beginning of the annual Christmas dinner sponsored by the employer. The supreme court held that the employee's claim was barred by the imported risk doctrine because the employee's possession of the pistol had no connection to his job. Space Steel Corp. v. Jones' Dependents, 248 So.2d 807, 808 (Miss.1971).
*350 ¶ 23. Of course, it is fundamental to the application of this defense that the particular risk actually play some part in causing the employee's injury. This Court is prepared to concede that an employee who, without authorization, brings intoxicants to the job site, proceeds to share those intoxicants with other employees, and is subsequently injured in a circumstance directly traceable to the alcoholimpaired condition of a fellow employee could properly be denied compensation for that injury under an "imported risk" defense.
¶ 24. The problem faced by Hurdle and Son in this instance lies in the matter of causation. There is little doubt that Sam Hurdle was in an impaired state at the time of the vehicular accident since he admitted to consuming at least six beers and the evidence indicated his blood alcohol content level to be at .158 when he was tested shortly after the accident. However, Sam Hurdle testified that the actual cause of the accident was a sudden and unexpected equipment failure on the truck in the form of a tire blow-out that caused him to lose control of the vehicle. The Commission found as a matter of fact that this equipment failure was the cause of the accident and not Sam Holloway's degree of intoxication.
¶ 25. While the members of this Court, viewing the same evidence, might easily draw a different conclusion from the evidence as to the true cause of the accident, we are reminded of our limited authority to overturn a finding of fact by the Commission that is supported by substantial evidence. Natchez Equip. Co., 623 So.2d at 273. Hurdle and Son attacks Sam Hurdle's credibility by suggesting that he is attempting to blame the accident on equipment failure as opposed to his own impaired state in an effort to assuage his guilt for causing Holloway's substantial injuries. This, it may be conceded, is an argument that has some persuasive force. However, the proper place to advance that argument was before the Commission sitting in its role as fact-finder. The Commission, apparently after giving due consideration to Hurdle and Son's attack on Sam Hurdle's believability, nevertheless elected to give substantial credence to his explanation of the accident. That is a matter entrusted to the Commission by the Mississippi Legislature when it enacted our state's workers' compensation laws. Id. We conclude that there is no basis for us to set aside the Commission's determination that equipment failure caused the accident, and not Sam Hurdle's intoxication. Therefore, Sam Hurdle's intoxication, even though traceable directly to Michael Holloway's efforts to procure beer for him, does not serve to bar Holloway's right to compensation under the theory of "imported risk."

VI.

Issue Four: Are the Commission's Findings of Fact Supported by Substantial Evidence?
¶ 26. Hurdle and Son, as its final issue, suggests that the factual findings made by the Commission do not find support in the evidence. The Commission, by adopting the findings of fact made by the administrative judge, made eighteen separate enumerated findings of fact. The Commission then applied the law relating to the various disputed issues to those findings and concluded that Michael Holloway's injuries were compensable.
¶ 27. In its general attack on the Commission's findings of fact, Hurdle and Son appears to take particular issue with the Commission's stated conclusion that, as to a substantial number of those eighteen findings of fact, the matter was not disputed by the parties. Hurdle and Son, in its brief to this Court, selects six issues that the Commission concluded to be undisputed and points to evidence in the record that would indicate that there might be some dispute.
¶ 28. As a logical first step in our inquiry, we must determine whether any one of *351 those six findings of fact under attack are crucial to the Commission's ultimate decision on compensability. In other words, would a decision that the particular finding of fact was not supported by substantial evidence necessarily require this Court to overturn the Commission's ruling? As will appear more fully in the discussion to follow, we conclude that certain of the findings may be disposed of in that manner. They simply are not pivotal to the key issue of compensability. As to those findings that survive this analysis, we would, of course, be required to treat them further. However, it should be noted that our inquiry is not into the correctness of the Commission's assertion that any particular finding is not disputed. The Commission may have, as to certain of the findings of fact, overstated the case to some extent, in saying they were beyond dispute. However, that alone does not permit this Court to set aside the underlying finding of fact essential to a correct decision of the case. Rather, our obligation remains to determine whether there is, in reality, substantial evidence in the record to support the finding even though there may indeed be evidence that would support a contrary finding. We will consider the six findings in that light.

A.

The Regularity of Holloway's Workday
¶ 29. Hurdle and Son's contention from the beginning of this controversy has been that Holloway was assisting Sam Hurdle in a personal endeavor not actually associated with either Sam Hurdle's or Holloway's actual job duties as farm laborers. In furtherance of that proposition, Hurdle and Son attacks the Commission's finding that the end of Holloway's work day at 5:00 was not rigidly observed, so that an injury occurring later in the evening could still be job-related. The Commission had made that finding in view of the fact that the accident in which Holloway was injured occurred at approximately 9:00 in the evening, a time which, in the ordinary course of events, would appear to be after Holloway had completed his duties as an employee of the farming enterprise. There was certainly evidence in the record to support a finding that these farm employees observed a somewhat relaxed work schedule, with time records being a rather haphazard enterprise. Nevertheless, the crucial issue before the Court cannot be decided based on whether Holloway customarily, rarely, or had never before, worked at the farm until 9:00 in the evening. There is no dispute that he was present at the farm at Sam Hurdle's urging prior to the accident. If Sam Hurdle's actions in procuring Holloway's presence at the farm were in furtherance of farm business or were authorized by some individual with authority to bind the partnership, then the time that the activities occurred becomes largely irrelevant, as does the question of whether a normal work day would have long since ended at the time of Holloway's injuries.

B.

The Finding that Holloway Performed Mechanical Work
¶ 30. Hurdle and Son disputes the Commission's finding that Holloway customarily did some of the mechanic work around the farm, claiming that the evidence showed that Holloway was almost exclusively a farm laborer who only occasionally changed the oil or greased pieces of farm machinery. Again, we find this issue essentially irrelevant. Whether Sam Hurdle, in procuring Holloway's continued presence at the farm on the evening in question, was acting with the permission of a partnership agent having authority to direct employees' activities is the question, and whether Holloway had any particular skill or experience in performing mechanic's tasks has no relevance as to that inquiry. It is beyond dispute that Holloway's presence at the farm on the evening of his injuries was connected with efforts to repair a truck. If he was duly directed to be *352 there in his capacity as an employee of Hurdle and Son, then his skill level as a mechanic does not matter.

C.

Transportation of Holloway To and From Work
¶ 31. Hurdle and Son disputes the finding that the employer routinely provided Holloway's transportation to and from work twenty percent of the time. We have dealt with this issue already in Part IV of this opinion.

D.

Whether Holloway's work on the truck was in the scope of his employment.
¶ 32. Hurdle and Son takes issue with the Commission's finding that J.K. Hurdle had given his son, Sam Hurdle, permission to utilize other farm employees in his efforts to rehabilitate the old farm truck. However, the attack is not on this particular finding, which is, indeed, undisputed since it was attested to both by Sam and J.K. Hurdle. Hurdle and Son now simply attempt to argue that the permission is being improperly characterized since it did not include a specific statement that such assistance was to be "a part of their normal work routine."
¶ 33. We have already dealt with this issue in Section III of this opinion. Absent some clearer expression by J.K. Hurdle that his permission was only for his son to ask for voluntary help outside working hours, we remain convinced that the Commission's construction of J.K. Hurdle's statement was a reasonable and logical one.

E.

The Commission's finding that the truck was a farm asset and was to be used, after repair, in farming operations.
¶ 34. Hurdle and Son, in attacking this finding, points to evidence in the record that Sam Hurdle was the prime mover in efforts to rehabilitate the truck and that his father was, at best, unenthusiastic about the idea. We have treated this issue already in Section III of the opinion and merely reiterate here that we consider it largely irrelevant what future use was to be made of this truck once it was repaired. So long as Michael Holloway was employed as a common farm laborer in this family farming operation, we are satisfied that, even were it undisputed that Holloway's efforts would accrue to the personal benefit of the employing partner's son rather than to the farming operation itself, Holloway's efforts undertaken at the direction of the employing partner would necessarily be considered within the scope of his employment.

F.

The Commission's finding that the blowout was the cause of the accident.
¶ 35. Hurdle and Son argues that the Commission's finding that Sam Hurdle's intoxication was not the cause of the accident was not supported by the evidence since Sam Hurdle testified that, although he thought the blow-out was what caused him to lose control, he could not say whether he could have avoided the accident if he had not previously consumed a number of beers. We have already discussed the resolution of this issue in Section V of this opinion. Certainly, there is evidence that would support a finding that the accident was due to Sam Hurdle's intoxication. Nevertheless, there was also evidence in support of a finding that equipment failure caused the accident. Sam Hurdle's inabilityor refusalto speculate as to the outcome of a hypothetical situation where he was faced with the same equipment failure but had not been drinking beer does not, of itself, undercut the evidence in this record that would support the Commission's findings. It is for that reason that we, as an appellate court reviewing the findings of fact of an administrative *353 body, are without authority to substitute our opinion as to where the weight of the evidence might lie on the question for that of the administrative body. Natchez Equip. Co., 623 So.2d at 273.
¶ 36. For the foregoing reasons, we conclude that there is no basis to disturb the Commission's finding of compensability based on the six findings of fact disputed by Hurdle and Son.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF MARSHALL COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.
LEE, J., CONCURS IN RESULT ONLY.